**NUPLA CORPORATION,**
Plaintiff–Appellant,

v.

**IXL MANUFACTURING COMPANY,**
INC., Defendant–Appellee.

No. 96–1388.

United States Court of Appeals,
Federal Circuit.

May 12, 1997.

Kamran Fattahi, Kelly, Bauersfeld & Lowry, Woodland Hills, CA, argued, for plaintiff–appellant. With him on the brief were Scott W. Kelley and John D. Bauersfield.

Neil F. Markva, Springfield, VA, argued, for defendant–appellee. With him on the brief were Cathleen Collins and George T. Kliavkoff, Kinsella, Boesch, Fujikawa & Towle, Los Angeles, CA.

Before ARCHER, Chief Judge, SKELTON, Senior Circuit Judge, and MICHEL, Circuit Judge.

MICHEL, Circuit Judge.

Nupla Corporation ("Nupla") appeals the judgment based on the decisions of the United States District Court for the Central District of California, No. 95–7992–R, granting two motions for partial summary judgment in favor of IXL Manufacturing Company, Inc. ("IXL") and dismissing the complaint as to all four of Nupla's causes of action. The case was submitted for our decision following oral argument on January 27, 1997. Because we agree that (1) Nupla's United States Reissue Patent No. RE 32,364 (" '364 patent") is invalid since the declaration submitted pursuant to 37 C.F.R. § 1.175 was insufficient as it addressed only one of three material changes from the original claims; and (2) Nupla's two registrations for the trademark CUSH–N–GRIP, U.S. Supplemental Reg. No. 895,244 (" '244 trademark") and U.S. Principal Reg. No. 1,742,769 (" '769 trademark"), are invalid as a matter of law because the mark is generic, we affirm.

## BACKGROUND

Nupla is the exclusive licensee of the '364 reissue patent, which was issued to inventor Joseph A. Carmien on February 24, 1984. The invention is directed to tool handles with flexible cores that can be inserted into the tools. The flexible core provides compressive support inside the handle and prevents buckling or collapse of the handle when the tool is subjected to high bending stress.

The '364 patent is a reissue of U.S. Patent No. 4,451,073 (" '073 patent"). The original patent contained a single independent claim:

A flexible core for insertion into a handle receiving socket of a hand tool,
said core comprising:
an elongated, generally cylindrical body;
a plurality of grooves formed in said body and spaced from one another
along said body, forming at least one socket filler for bearing
compressive load in said handle receiving socket; and
a flexible shaft capable of bending to permit said core to conform to the
shape of said handle receiving socket.

Carmien filed a reissue application, deleting original claims 1–5 and substituting for them reissue application claims 6–10 to change, among other things, the limitation "a plurality of grooves" to "at least one groove." The reissue application also added claims 11–19. His declaration, filed pursuant to 37 C.F.R. § 1.175, explained that the original patent contained an error, in that its claims were too narrowly drawn to "a plurality of grooves" because of a mistake by the prosecuting patent attorney caused by the attorney's misunderstanding of instructions given by the inventor. During the reissue examination, the patent examiner rejected all of the reissue application claims as unpatentable over U.S. Patent No. 4,301,109 ("the Kain patent"), which relates to conveyor idlers. The claims were further amended, without a supplementary declaration, in response to this rejection and claims 6–19 were ultimately allowed.

Nupla is also the owner of the '244 and '769 trademark registrations, each of which is for the mark CUSH–N–GRIP in connection with tool handles and replacement handle kits.

Nupla filed a complaint against IXL on November 22, 1995, for contributory infringement and inducing infringement of the '364 reissue patent by IXL's manufacture and sale of tool handles and replacement handles, and for IXL's infringement of the CUSH–N–GRIP trademark based on IXL's use of the name CUSHION–GRIP in the sale and advertising of IXL's products.

## DISCUSSION

Summary judgment is reviewed de novo. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir. 1994). Patents have a statutory presumption

of validity, 35 U.S.C. § 282 (1994), which can only be overcome by clear and convincing evidence. *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375, 231 USPQ 81, 87 (Fed.Cir.1986).

## I.

The reissue statute, 35 U.S.C. § 251 (1994), provides in relevant part:

Whenever any patent is, *through error without any deceptive intention,* deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or *by reason of the patentee claiming more or less than he [or she] had a right to claim* in the patent, the Commissioner shall ... reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

. . . .

The provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent. . . .

(emphasis added).

■ The reissue regulations, 37 C.F.R. §§ 1.171–179 (1996), require an applicant to file an oath or declaration with an application for reissue. The declaration must include:

(1) When the applicant verily believes the original patent to be wholly or partly inoperative or invalid, stating such belief and the reasons why.

. . . .

(3) When it is claimed that such patent is inoperative or invalid "by reason of the patentee claiming more or less than he [or she] had the right to claim in the patent," distinctly specifying the excess or insufficiency in the claims.

. . . .

(5) Particularly *specifying the errors relied upon,* and *how they arose* or occurred.

(6) Stating that said errors arose "without any deceptive intention" on the part of the applicant.

37 C.F.R. § 1.175(a) (1996) (emphasis added). Our case law requires a reissue application to include declarations "to specify every difference between the original and reissue claims." *In re Constant,* 827 F.2d 728, 729, 3 USPQ2d 1479, 1480 (Fed.Cir.1987). In *Constant,* this court affirmed the decision of the United States Patent and Trademark Office, Board of Patent Appeals and Interferences ("Board") which affirmed the examiner's rejection of a reissue application on the ground that the applicant failed to comply with 37 C.F.R. § 1.175. There, the appellant argued that the Board erred in its interpretation of the regulation by requiring "every difference between the original and reissue claims" to be specified. This court rejected that appeal because the declaration addressed only one type of change, and "failed to address the remaining 'excesses and insufficiencies' as required by § 1.175(a)(3)." *Id.* The court, while noting that there was no implication that the Manual of Patent Examining Procedure ("MPEP") is binding on this court, cited MPEP § 1444 which states now, as it did then, that "[e]very departure from the original patent ... must be particularly and distinctly specified and supported in the original, or a supplemental, reissue oath or declaration under 37 C.F.R. 1.175." MPEP § 1444 (6th ed., Rev.1, Sept. 1995); *Constant,* 827 F.2d at 729, 3 USPQ2d at 1480. The court concluded that "[a]ppellant has failed to show any error of law in the Board's application of rule 175 or in the rule's promulgation." *Constant,* 827 F.2d at 729, 3 USPQ2d at 1480.

■ Here, the only declaration provided by the inventor [1] with the reissue application merely stated in relevant part:

I believe the original patent to be partly inoperative or invalid because of error without any deceptive intent on the part of the applicant, *by reason that I claimed less that [sic] I had a right to claim* . . . .

. . . .

---

1. A declaration was also provided by the attorney who prosecuted the reissue application. This declaration discussed only those issues included in the inventor's declaration.

194

Because independent claim 1 of my original patent includes the language: "a plurality of grooves formed in said body and spaced from one another along said body", at column 4, lines 38–39, I believe my patent to be partly inoperative or invalid.

. . . .

When I filed my original patent application, I intended only that "at least one socket filler" be required. The fact that my independent claim 1 requires a plurality of grooves to form that "at least one socket filler", when it is clear that only one such groove is needed, simply evidences a mere oversight, or lack of foresight, on my behalf. The requirement of a "plurality of grooves" was not needed at the time the original application was filed, nor did I intend that my invention be so limited.

(emphasis added).

Although the declaration only explains one difference in scope between the original and reissue claims, there were actually three material differences in scope. First, a limitation was changed from "a plurality of grooves" to "at least one groove" (the "groove" limitation). The "groove" limitation is adequately explained by the declaration filed with the reissue application. Second, there were added limitations to "a tool portion having a handle receiving socket" and "a handle received and secured within said handle receiving socket" (the "tool" limitations). Third, there were still further added limitations to "said shaft having a diameter reduced from that of said body to define a groove separating said at least one socket filler from the remainder of said body" and "said at least two portions of said body being connected together by a flexible shaft capable of bend-

ing to permit said core to conform to the shape of said handle receiving socket" (the "shaft" limitations). Neither the "tool" limitations nor the "shaft" limitations were addressed in the declaration. Nor were any supplemental declarations filed.

■ Every reissue claim of the '364 patent contains at least one new limitation absent from the originally issued claims that is not explained by the declaration. According to the statute, these new limitations must represent an error in the original claims. Reissue claims 6–10 contain the "tool" limitations, and reissue claims 11–19 contain both the "shaft" limitations and the "tool" limitations. Nupla argues that the "tool" limitations were added during the prosecution of the reissue application to overcome the rejection for obviousness in light of the Kain patent[2] and were not to correct "errors" in the original patent. Therefore, Nupla argues, a declaration to explain this additional limitation is unnecessary, since there was no "error."

Nupla misperceives the nature and scope of the errors covered by the reissue statute and regulations. Although the underclaiming error corrected by the addition of the "groove" limitation resulted from miscommunication between the inventor and the prosecuting attorney, miscommunication is not the only kind of error contemplated by the statute. Rather, the "error" must only be the "claiming of more or less than he [or she] had a right to claim" for some excusable reason. 35 U.S.C. § 251. Leaving aside the excusability of the reason, the essence of "error" addressable in the reissue procedure is this overclaiming or underclaiming. When the inventor here added the "tool" limitations

---

**2.** There is no question that the examiner was authorized to reject the reissue claims based on the Kain prior art patent. The reissue regulations state that "[a]n original claim, if re-presented in the reissue application, is subject to reexamination, and the entire application will be examined in the same manner as original applications...." 37 C.F.R. § 1.176. Pertinent prior art is citable, even if it was not cited in the original examination. *See Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 882 F.2d 1556, 1563, 11 USPQ2d 1750, 1756 (Fed.Cir.1989) ("Reissue is essentially a reprosecution of all claims. For example, original claims which a patentee wants to maintain unchanged may nevertheless be re-

jected on any statutory ground."). If such represented claims can be fully reexamined, then it is only logical that an altered claim can also be fully examined. The need to examine such an altered claim is more acute since the claim has never been initially examined. Thus, it was appropriate for the examiner to reject the reissue application in light of the Kain patent, and for the inventor to respond with argument and amendment. There is, however, nothing in the reissue statute or regulations that indicates that newly found statutory bases for rejection should be treated differently vis-à-vis the declaration requirement.

to overcome the rejection in the reissue examination based on the Kain patent, the inventor was conceding that, in view of Kain, he had overclaimed in the '073 patent. Presumably his excuse was that at the time of the prosecution of the original application, he was unaware of Kain. The reissue procedure is only available to correct error in claims in patents as originally issued. As we have noted before, "[t]he reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute *de novo* his original application." *In re Weiler*, 790 F.2d 1576, 1582, 229 USPQ 673, 677 (Fed.Cir. 1986).

■ The reissue regulations require full explanation of each "excess" in the original claims. As noted above, section 1.175(a)(3), the primary applicable subsection, concerns "the patentee claiming more ... than he [or she] had the right to claim in the patent" and the subsection then expressly requires that the declaration meet the test of "distinctly specifying the excess ... in the claims." Section 1.175(a)(5) then requires an explanation of the "errors relied upon, and how they arose or occurred." Finally, section 1.175(a)(6) requires an assertion that each such error arose without deceptive intent. Therefore, only if the declaration or any supplemental declaration establishes that the overclaiming or underclaiming resulted from an excusable error may reissue application claims be allowed. If the alterations which the reissue applicant made were not to correct an "error," they could not be made during reissue.[3]

By volunteering narrowing amendments to overcome the Kain rejection, the patentee

was necessarily admitting that he had overclaimed in this respect, even while underclaiming in another respect, in the original patent. Because the patent examiner rejected the claims in view of Kain, he arguably knew in what way the original patent overclaimed. Yet, the patentee failed to explain in in a supplementary declaration the source of the overclaiming error, or that it was non-deceptive and otherwise excusable. Nor did he show how and why the new limitations corrected the overclaiming. The examiner could not have had any idea of "the errors relied upon," much less "how they arose." Therefore, even with respect to the "tool" limitations added merely in response to and to overcome the Kain rejection, the purposes of the declaration requirement have been frustrated. Because neither of the declarations filed said one word respecting the "tool" limitations, the declarations were wholly insufficient.

■ We therefore hold, based on the principle announced in *Constant* and the explicit requirements of 37 C.F.R. § 1.175(a)(3), (5), and (6), that when amendments correcting an overclaiming are made during reissue prosecution in response to a rejection, a patentee is obligated to file a supplementary declaration explaining the source of the overclaiming error, that it was non-deceptive and otherwise excusable, and how the amendment corrects the overclaiming. Since no declaration, either original or supplementary, explained the error resulting in the amendments to the reissue application claims to include the "tool" limitations, the declaration was insufficient. As noted above, all the reissue claims contain the "tool" limitations. Therefore, they were all properly deemed invalid.[4]

3. This is not to say that a reissue applicant necessarily must admit without basis that an error was made in the original patent. If, for instance, this applicant, after the rejection in reissue, believed that Kain didn't affect the patentability of the claims (because, for instance, it concerned not tool handles but conveyor idlers), he could have simply appealed the final rejection to the Board and, if necessary, to this court.

Furthermore, an applicant need not fear that a reissue claim may create a new patentability problem. In that instance, the applicant could simply amend the reissue claim during reissue prosecution and file a supplementary declaration

that once again explains the error in the original patent and how the new amended reissue claim solves the problem. The regulations do not require an explanation of any "error" in a withdrawn reissue claim.

4. Furthermore, the "shaft" limitations are also not addressed by the declaration. Nor does Nupla present any argument regarding them here. Unlike the "tool" limitations which were added during reissue prosecution, the "shaft" limitations were in the initially filed reissue application. Nupla can hardly assert they were necessitated by anything said by the examiner during reissue examination. Even were we to assume

We do note that this is not a case in which the examiner dictated specific amendments necessary for the reissue application claims to be allowed. In that event, arguably he would already know what the declaration might tell him. Nor is this a case in which only small language changes that do not affect the scope of the claims were suggested by the applicant. We make no comment, ruling, or intimation on the need for a supplemental declaration explaining such dictated or non-substantive amendments.

## II.

█ Nupla's second, third, and fourth causes of action for trademark infringement and misrepresentation were dismissed based on the conclusion that Nupla's registrations for the trademark CUSH–N–GRIP were invalid as a matter of law because the mark was either (1) generic, or (2) merely descriptive and Nupla had not proven secondary meaning. Based on overwhelming documentary evidence of record showing widespread and long-time prior use of the CUSHION–GRIP mark in the hand tool industry, we agree with the district court's conclusion that there is no genuine issue of material fact that Nupla's mark, which is merely a misspelling of CUSHION–GRIP, is also generic as a matter of law, and the registrations are therefore invalid. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9–10, 189 USPQ 759, 764–65 (2d Cir.1976); *McCarthy on Trademarks* § 12.12[2] (3d ed.1992). Since the mark is generic, there is no need for us to reach the question of possibly acquired secondary meaning of an otherwise merely descriptive mark.

*AFFIRMED.*

than for the "tool" limitations, the very purpose of requiring a declaration is entirely frustrated. The reissue examiner could only guess as to the need for, purpose of, allowability of, and sufficiency of the "shaft" limitations. This is exactly the problem the requirement of a reissue declaration is intended to avoid. Thus, these unexplained added limitations form an alternative basis for affirming the holding of invalidity of reissue claims 11–19.

that the addition of the "shaft" limitations was to correct some error (for instance, overbreadth in light of after-discovered prior art), what prior art this might have been is entirely unexplained. Nowhere in the reissue declaration does the inventor indicate the basis for concluding that the original claims were overbroad, an explanation of how the overclaiming occurred (such as that he was unaware of the prior art), nor any explanation of how the error is corrected by adding the "shaft" limitations. Therefore, more so even