**DETHMERS MANUFACTURING COMPANY, INC., Plaintiff–Appellant,**

v.

**AUTOMATIC EQUIPMENT MFG CO., Defendant–Cross Appellant.**

Nos. 00–1114, 00–1130.

United States Court of Appeals, Federal Circuit.

Dec. 5, 2001.

David A. Tank, Davis, Brown, Koehn, Shors & Roberts, P.C., of Des Moines, IA, argued for plaintiff-appellant. With him on the brief were Brian J. Laurenzo and Michael C. Gilchrist, Dorsey & Whitney, LLP, of Des Moines, IA.

Timothy R. Engler, Harding, Schultz & Downs, of Lincoln, Nebraska, argued for defendant-cross appellant. With him on the brief was Donald R. Schoonover, Schoonover Law Firm, of Fremont Hills, MO.

John M. Whealan, Solicitor, United States Patent and Trademark Office, of Arlington, VA, for amicus curiae Director of the United States Patent and Trademark Office. With him on the brief were Kristin L. Yohannan and Cynthia C. Lynch, Associate Solicitors.

Before CLEVENGER, SCHALL, and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Opinion concurring–in–part, dissenting–in–part filed by Circuit Judge DYK.

SCHALL, Circuit Judge.

Dethmers Manufacturing Company, Inc. ("Dethmers") appeals the decision of the United States District Court for the Northern District of Iowa that granted Automatic Equipment Manufacturing. Co.'s ("Automatic's") motion for summary judgment that United States Patent No. Re. 35,482 (the "reissue patent"), owned by Dethmers, is invalid. *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.,* 23 F.Supp.2d 974 (N.D.Iowa 1998) ("*Dethmers I* "). Automatic cross-appeals the court's grant of Dethmers' motion for summary judgment of non-infringement of Automatic's U.S. Patent No. 5,356,166 (the "'166 patent"). *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.,* 70 F.Supp.2d 944 (N.D.Iowa 1999) ("*Dethmers II* "). Final judgment pursuant to these decisions was entered under Rule 54(b) of the Federal Rules of Civil Procedure. *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.,* 189 F.R.D. 526 (N.D.Iowa 1999). With respect to Dethmers' appeal, we hold that some, but not all, of the claims of the reissue patent are invalid. With respect to Automatic's cross-appeal, we conclude that the court correctly decided that prosecution history estoppel bars Automatic's assertion against Dethmers of infringement of the '166 patent under the doctrine of equivalents. We therefore affirm-in-part, reverse-in-part, and remand.

### BACKGROUND

#### I.

The reissue patent is directed to collapsible and removable hitches for towing vehicles, such as a hitch for towing a car behind a motor home. The application for reissue was filed on March 24, 1995, seeking reissue of U.S. Patent No. 5,232,240 (the "original patent"), which issued on August 3, 1993.

The original patent was filed with independent claim 1 and dependent claims 2–6 (the "application claims"). During prosecution, the examiner asserted that claims 1 and 2 were not patentable over the prior art. The Examiner told the applicant, however, that claims 4–6 contained patentable subject matter and would be "allow-

able if rewritten ... to include all of the limitations of the base claim and any intervening claim." In response, the applicant cancelled application claims 1–4 and submitted new application claim 7. Application claim 7 corresponds to application claim 4 rewritten as the examiner suggested. The original patent issued with just three claims: claim 1, which corresponds to application claim 7, and claims 2 and 3, which correspond to application claims 5 and 6, respectively.

The reissue application was filed to correct two asserted errors in the original patent: (1) the inclusion of the subject matter of application claims 2 and 3 in application claim 7 (and thus in original patent claim 1) and (2) the use of the term "pivot block" in application claim 4 (and thus in original patent claim 1). The examiner originally rejected the reissue application because the declaration filed with the application failed to satisfy the requirements of 37 C.F.R. § 1.175(a)(5). As then in effect, that rule required a reissue declaration to particularly specify the errors that were relied upon as the basis for reissue and to explain how the errors arose. The examiner noted that the declaration specified how the asserted errors in the claims arose, but did not specify how the asserted errors in the specification and abstract arose. In response, the applicant submitted a substitute reissue declaration that specified the errors in the specification and abstract and that included a table summarizing the differences between the reissue claims and the original patent claims. Shortly thereafter, the reissue patent was allowed to issue. The reissue patent, which was issued on March 25, 1997, contains ten claims. Claims 1, 6, 7, and 8 are independent claims, while claims 2, 3, 4, 5, 9, and 10 are dependent claims.

## II.

On June 26, 1996, Dethmers sued Automatic, alleging that Automatic's tow bars infringed the reissue patent. In response, Automatic filed a motion for summary judgment that raised three separate grounds for invalidating the reissue patent. Automatic asserted that the errors corrected in the reissue patent were not the type that can be corrected under the reissue statute, 35 U.S.C. § 251; that the reissue patent was not directed to the same invention as the original patent, as required by § 251; and that the reissue declaration was fatally defective because it failed to satisfy the requirements of 37 C.F.R. § 1.175 ("Rule 175"). *Dethmers I,* 23 F.Supp.2d at 1014. The court denied Automatic's motion on the first two grounds, but granted its motion on the third ground, determining that the reissue declaration did not satisfy the requirements of the version of Rule 175 that was in effect at the time the reissue application was pending. *Id.* at 1019, 1020, 1025. Specifically, the court determined that, while the reissue declaration identified the "big picture" of the reissue amendments, it failed to "detail particularly and specifically each and every alteration in or departure from the claims in the [original] patent." *Id.* at 1024. The court also determined that "Dethmers was required to specify[ ] particularly the defects in the drawings" that were corrected in the reissue. *Id.* at 1025. The court concluded that "[b]ecause all the reissue claims contain undisclosed alterations, either in their text or in supporting drawings and specifications, all are properly deemed invalid." *Id.* The district court reached its decision based on a *de novo* review of the record. Neither party objected to that standard of review. The court therefore granted Automatic's motion for summary judgment of invalidity. *Id.* Dethmers appeals.

Automatic also responded to Dethmers' suit by filing a counterclaim in which it alleged that Dethmers' EXCALI BAR tow

bar infringed the '166 patent, which is directed to a lockable, telescoping tow bar assembly. In *Dethmers I*, the court granted Dethmers' motion for summary judgment that it did not literally infringe the '166 patent, but denied its motion with respect to infringement under the doctrine of equivalents because it found that there were genuine issues of material fact as to that issue. *Dethmers I*, 23 F.Supp.2d at 1032–43. In *Dethmers II*, the district court revisited its decision on the doctrine of equivalents issue, and determined that prosecution history estoppel barred application of the doctrine. *Dethmers II*, 70 F.Supp.2d at 961–73. The court therefore granted Dethmers' motion for summary judgment of non-infringement. *Id.* at 973. Automatic appeals the judgment with respect to infringement under the doctrine of equivalents.

We have jurisdiction over Dethmers' appeal and Automatic's cross-appeal pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I.

■ We review a grant of summary judgment *de novo* and affirm only if, when the facts are viewed in the light most favorable to the non-moving party and all doubts are resolved in favor of the non-movant, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Monon Corp. v.*

*Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257, 57 USPQ2d 1699, 1702 (Fed.Cir. 2001). We begin with Dethmers' appeal. Because there are no facts in dispute, the issue before us is a pure question of law: whether the substitute reissue declaration satisfies the requirements of Rule 175.

At the time the reissue application was pending, Rule 175 required a reissue declaration to include the following information:

(1) When the applicant verily believes the original patent to be wholly or partly inoperative or invalid, stating such belief and the reasons why.

(2) When it is claimed that such patent is inoperative or invalid "by reason of a defective specification or drawing," particularly specifying such defects.

(3) When it is claimed that such patent is inoperative or invalid "by reason of the patentee claiming more or less than he had the right to claim in the patent," distinctly specifying the excess or insufficiency in the claims.

\* \* \* \* \* \*

(5) Particularly specifying the errors relied upon, and how they arose or occurred.

(6) Stating that said errors arose "without any deceptive intention" on the part of the applicant.

37 C.F.R. § 1.175(a) (1996).[1]

We interpreted this version of Rule 175 in *Nupla Corp. v. IXL Manufacturing Co.*, 114 F.3d 191, 42 USPQ2d 1711 (Fed.Cir.

---

1. All references to Rule 175 in this opinion are to this version of the rule. The current version of the rule, which took effect on December 1, 1997, *see Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1358, 58 USPQ2d 1692, 1697 (Fed.Cir.2001), after the reissue patent issued, is more liberal. The rule now requires a reissue declaration to state "at least one error being relied upon as the basis for reissue and to state that [a]ll errors being corrected ... arose without any deceptive intention on the part of the applicant." 37 C.F.R. 1.175

(2001). If additional errors are corrected during prosecution of the reissue patent, the applicant must submit a supplemental ... declaration stating that every such error arose without any deceptive intention on the part of the applicant. *Id.* However, unless all errors previously stated in the original ... [reissue] declaration [as being the basis for reissue] are no longer being corrected, a subsequent ... declaration ... need not specifically identify any other error or errors being corrected, as

1997), and in *In re Constant*, 827 F.2d 728, 3 USPQ2d 1479 (Fed.Cir.1987). In both cases we held that the rule requires a reissue declaration to "specify every difference between the original and reissue claims." *Nupla*, 114 F.3d at 193, 42 USPQ2d at 1713; *Constant*, 827 F.2d at 729, 3 USPQ2d at 1480. In *Nupla* and in *Constant*, this court reviewed the issue before it without deference to previous administrative determinations. We feel constrained by our previous applications of the *de novo* standard of review and we accordingly follow that standard in this case.[2]

 Dethmers argues that the district court erred in interpreting those cases as requiring verbatim support in the substitute reissue declaration for every change that was made in the reissue application. We agree with Dethmers that, in view of their facts, *Nupla* and *Constant* should not be read as standing for the proposition that word-for-word correspondence is required between a reissue declaration and the changes made in a reissue application. The declarations in *Nupla* and *Constant* failed to make any reference to several of the changes made in the respective reissue applications. *Nupla*, 114 F.3d at 194, 42 USPQ2d at 1714 (noting that the reissue declaration explains only one of "three material differences in scope" between the reissue and original patent); *Constant*, 827 F.2d at 729, 3 USPQ2d at 1480 (stating that the reissue

application addressed one difference between the reissue and original claims, but "failed to address the remaining 'excesses and insufficiencies' as required by [Rule 175]."). Nevertheless, Rule 175 does require a reissue declaration to "particularly specify[ ] each error relied upon, and how they arose or occurred" and to state that the "errors arose 'without any deceptive intention.' " 37 C.F.R. § 1.175(a). As construed in *Nupla*, Rule 175 requires a reissue declaration "explaining the source of [every] error, that it was non-deceptive and otherwise excusable, and how the amendment corrects the [error.]" *Nupla*, 114 F.3d at 195, 42 USPQ2d at 1715. We therefore must determine whether the district court correctly concluded that the substitute reissue declaration failed to satisfy these requirements.

The relevant passages from the reissue declaration are set forth below:

"There are two substantive errors that arose in the claims of the patent which are at issue.

The first error that arose in the claims of the patent was the inclusion of the subject matter of [application] claims 2 and 3 in the amended base [application] claim 7. This subject matter was not material to the invention. This subject matter had already been disclosed in Johnson's own prior patent which was cited by the Examiner to reject [application] claims 2 and 3. Furthermore, the Examiner stated that the basis for al-

---

long as it states that every ... error arose without any deceptive intention on the part of the applicant. *Id.* Thus, while the version of the rule at issue in this appeal required the reissue declaration to particularly specify every error, the current version of the rule requires the reissue declaration to specify only one error.

2. In their initial briefs, the parties did not ask us to depart from the *de novo* standard of review. After oral argument, the panel *sua*

*sponte* asked for supplemental briefing directed to the question of whether a different standard of review should be applied: specifically, one that accords deference to a decision of the Patent and Trademark Office granting a reissue patent and determining that the reissue application complies with section 1.175 of the Patent and Trademark Office's rules and regulations. Only the court sitting en banc can depart from the *de novo* standard of review set forth in *Nupla* and *Constant*.

lowability was that the prior art failed to teach the use of a pivot bolt mounted through a pivot block which allows pivotal movement of the rear portion of the apparatus about a transverse horizontal axis. This structure has nothing to do with the subject matter of [application] claims 2 and 3. Accordingly, Johnson claimed less than he had the right to claim when the subject matter of [application] claims 2 and 3 and related language were included in amended [application] base claim 7.

The second error which arose in the claims was the use of the potentially structurally limiting term 'pivot block' in original [application] claim 4 which the Examiner then included in his statement of reasons for allowable subject matter. It is believed that the term 'pivot means' would have been equally allowable as it was Johnson's teaching of means which allows pivotal movement of the rear portion of the apparatus about a transverse horizontal axis which was novel and non-obvious over the prior art. None of the prior art patents cited in the original patent teach such means which allows for pivotal movement between a storage position, wherein the pivotal plane of the arms and bars is generally vertical, and a towing position, wherein the pivotal plane of the arms and bars is generally horizontal. Accordingly, Johnson again claimed less than he had the right to claim when [application] base claim 7 was limited to a 'pivot block having upper and lower surfaces, forward and rearward ends, and opposing side surfaces . . . .' [sic]

The errors arose because Johnson failed to appreciate the limiting effects of the above language. Such errors arose without any deceptive intent on the part of Johnson or his attorneys." *Dethmers I,* 23 F.Supp.2d at 1023–24 (alterations in original) (quoting the substitute declaration). The declaration includes the following table, which "summarizes how the claims submitted for reissue differ in scope from the originally issued claims:"

| Claim Submitted For Reissue | Original Claim | How Claim Submitted for Reissue Differs from Original Claim |
|---|---|---|
| 1 | 1 | No requirement that pivot arms be present. No requirement for connection means to selectively connect pivot arms to a vehicle to be towed. |
| 2 | 2 | No requirement that pivot arms be present. No requirement for connection means to selectively connect pivot arms to a vehicle to be towed. |
| 3 | 3 | No requirement that pivot arms be present. No requirement for connection means to selectively connect pivot arms to a vehicle to be towed. |
| 4 | 1 | No requirement for means to lock the pivot arms and the bars in axial alignment. |
| 5 | 1 | No substantive difference in scope. |
| 6 | 1 | No requirement that pivot arms be present. No requirement for connection means to selectively connect pivot arms to a vehicle to be towed. A "pivot member" is required instead of a "pivot block." |
| 7 | 1 | No requirement that pivot arms be present. No requirement for connection means to selectively connect pivot arms to a vehicle to be towed. "Pivot means" required instead of a "pivot block." |
| 8 | 1 | Identical claims. |
| 9 | 2 | Identical claims. |
| 10 | 3 | Identical claims. |

*Id.* at 1024 (quoting the substitute declaration). The declaration also identifies typographical errors that were corrected in the reissue application. *Id.*

■ As discussed above, the district court determined that all of the reissue claims are invalid because they all "contain undisclosed alterations, either in their text or in the supporting drawings and specifications." *Id.* at 1025. Because the court did not discuss each claim individually, it is difficult for us to review this determination. Automatic has not pointed to any changes to the specification that were not explained in the reissue declaration. The changes to the drawings that were made in the reissue application consist of the addition of reference numerals to two of the figures. In *Nupla*, we indicated that a reissue declaration might not need to explain an amendment that was required by the examiner because the examiner "arguably ... would already know what the declaration might tell him." *Nupla*, 114 F.3d at 196, 42 USPQ2d at 1715–16. We also left open the question whether "small language changes that do not affect the scope of the claims" need to be explained in a reissue declaration. *Id.*, 114 F.3d 191, 42 USPQ2d at 1716. We hold that be-

cause the changes to the drawings made in the reissue application appear to have been required by the Patent Office and do not affect the scope of the claims, they did not have to be explained in the reissue declaration. Because the only other differences in the reissue patent appear in the claims, the validity of each claim turns on whether the substitute reissue declaration explains every difference in that claim. We discuss each claim in turn.

*Reissue Claim 1*

■ Reissue claim 1 is set forth below. In accordance with 37 C.F.R. § 1.173, the material deleted from the claim is set forth in boldface in brackets.

 1. A towing hitch, comprising:

 a frame having a forward portion for selective removable connection to a towing vehicle, and a rearward portion for selective removable connection to a vehicle to be towed;

 said forward portion including a generally horizontal forwardly extending member adapted for selectively lockable receipt within a conventional receiver hitch;

 said rearward portion including first and second elongated bars having forward and rearward ends, the forward ends of said bars pivotally connected to a pivot bolt for pivotal movement within the same plane about said pivot bolt;[3]

 **[a first pivot arm pivotally connected at a forward end to the rearward end of said first bar for pivotal movement coplanar with said first and second bars;**

 **a second pivot arm pivotally connected at a forward end to the rearward end of said second bar for pivotal movement coplanar with said first and second bars;**[4]

 **connection means connected to rearward ends of said pivot arms for selective removable connection to a vehicle to be towed;**[5]

 **means connected to said first pivot arm and first bar for selectively locking said first pivot arm and first bar in axial alignment;**

 **means connected to said second pivot arm and second bar for selectively locking said second pivot arm and second bar in axial alignment;**[6]]

 said rearward portion further including a pivot block having upper and lower surfaces, forward and rearward ends, and opposing side surfaces, pivotally connected to said forward portion on a generally horizontal pivot axis extending through said side surfaces of the pivot block;

 said pivot bolt being mounted through the upper and lower surfaces of said pivot block, rearwardly of and perpendicular to the pivot block pivot axis, so as to pivot with said pivot block;

 said pivot block connected for pivotal movement between a storage position, wherein the pivotal plane of the [arms and] bars is generally vertical, and a towing position, wherein the pivotal plane of the [arms and] bars is generally horizontal.[7]

---

**3.** These three clauses were included in application claim 1.

**4.** These two clauses were included in application claim 2.

**5.** This clause was included in application claims 1 and 2.

**6.** These two clauses were included in application claim 3.

**7.** These three clauses were included in application claim 4.

The substitute reissue declaration provides adequate support for this claim. The only differences between reissue claim 1 and original patent claim 1 result from the deletion of the limitations that appeared in application claims 2 (clauses 4–6) and 3 (clauses 7–8) and the deletion of the reference to "arms" in clause 11, which was necessitated by the deletion of the pivot arms clauses (clauses 4–6). These differences are specified in the substitute reissue declaration by the reference to the error of including the limitations of application claims 2 and 3 and in the table, which specifies the deletion of the requirement for pivot arms and the deletion of the corresponding connection means. The declaration explains how this error arose and states that it arose without deceptive intent. The declaration therefore satisfies the requirements of Rule 175 with respect to reissue claim 1.

*Reissue Claims 2 and 3*

The words of reissue claims 2 and 3 are unchanged from the original patent, but their scope is different because they depend from reissue claim 1, which was amended in the reissue. Because the substitute reissue declaration adequately supports reissue claim 1, it also adequately supports reissue claims 2 and 3.

*Reissue Claim 4*

■ Reissue claim 4 is set forth below:

4. The hitch of claim 1, further comprising

a first pivot arm having a forward end and a rearward end, said first pivot arm pivotally connected at said forward end to the rearward end of said first bar for pivotal movement coplanar with said first and second bars;

a second pivot arm having a forward end and a rearward end, said second pivot arm pivotally connected at said forward end to the rearward end of said second bar for pivotal movement coplanar with said first and second bars; and

connection means connected to said rearward ends of said pivot arms for selective removable connection to said vehicle to be towed.

Reissue claim 4 depends from reissue claim 1. As discussed above, reissue claim 1 solves the error identified in the declaration of including the subject matter of application claims 2 and 3 in the base claim because reissue claim 1 does not include the limitations of application claims 2 and 3. Reissue claim 4 recites the limitations of application claim 2. Thus, reissue claim 4 includes the limitations of application claim 2 but does not include the limitations of application claim 3.

The substitute reissue declaration does not support reissue claim 4. As discussed above, the reissue declaration states that it was an error to include the limitations of application claims 2 *and* 3. It does not, however, identify as an error the failure to include a claim including the limitations of application claim 2 but not including the limitations of application claim 3. There is no separate discussion of the error of including the limitations of application claim 3. Although the table indicates that reissue claim 4 does not require the locking means (which was recited in application claim 3), that statement is not sufficient to satisfy Rule 175 because it does not specify the error, explain how the error arose, or state that the error arose without deceptive intent.

*Reissue Claim 5*

■ Reissue claim 5 is set forth below:

5. The hitch of claim 4, further comprising:

means connected to said first pivot arm and first bar for selectively locking said first pivot arm and first bar in axial alignment; and

means connected to said second pivot arm and second bar for selectively lock-

ing said second pivot arm and second bar in axial alignment.

Reissue claim 5 depends from reissue claim 4, and reintroduces the limitations of application claim 3. According to the table in the substitute reissue declaration, there is "[n]o substantive difference in scope" between reissue claim 5 and original patent claim 1.

The substitute reissue declaration does not support reissue claim 5. First, this claim depends from a claim that is not supported by the reissue declaration (reissue claim 4). In addition, there is no mention in the declaration of an error associated with failing to include a dependent claim that is of essentially the same scope as original patent claim 1. Finally, claim 5 does not correct any of the errors identified in the substitute reissue declaration because it includes the limitations of both application claims 2 and 3 and recites a "pivot block."

*Reissue Claim 6*

■ Reissue claim 6 is set forth below:

6. A towing hitch, comprising:

a frame having a forward portion for selective removable connection to a towing vehicle, and a rearward portion for selective removable connection to a vehicle to be towed;

said forward portion including a generally horizontally forwardly extending member adapted for selectively lockable receipt within a conventional receiver hitch;

said rearward [sic] including first and second elongated bars having forward and rearward ends, the forward ends of said bars pivotally connected to a pivot bolt for pivotal movement within the same plane about said pivot bolt;

said rearward portion further including a pivot member having upper and lower surfaces, forward and rearward ends, and opposing side surfaces, pivotally connected to said forward portion on

a generally horizontal pivot axis extending through said side surfaces of the pivot member;

said pivot bolt being mounted through the upper and lower surfaces of said pivot member rearwardly of and perpendicular to the pivot member pivot axis, so as to pivot with said pivot member;

said pivot member connected for pivotal movement between a storage position, wherein the pivotal plane of the bars is generally vertical, and a towing position, wherein the pivotal plane of the bars is generally horizontal.

Reissue claim 6 is similar to reissue claim 1 except that the term "pivot member" is used instead of the term "pivot block" in the last three clauses. This claim therefore addresses the error of including the limitations of application claims 1 and 2 and the error of reciting a "pivot block."

The substitute reissue declaration does not support this claim. The table indicates that one difference between reissue claim 6 and original claim 1 is that reissue claim 6 requires a "pivot member" instead of a "pivot block," but the text of the declaration does not mention the "pivot member" limitation. Although the declaration states that it was an error to recite a "pivot block" because it is believed that a "pivot means" would have been allowable, it does not specify that the failure to include a claim reciting a "pivot member" instead of a "pivot block" was an error, does not specify how that error arose, and does not state that the error arose without deceptive intent.

*Reissue Claim 7*

■ Reissue claim 7 is set forth below:

7. A towing hitch, comprising:

a frame having a forward portion for selective removable connection to a towing vehicle, and a rearward portion for

selective removable connection to a vehicle to be towed;

said forward portion including a generally horizontal forwardly extending member adapted for selectively lockable receipt within a conventional receiver hitch;

said rearward portion including first and second elongated bars having forward and rearward ends, the forward ends of said bars pivotally connected to a pivot bolt for pivotal movement within the same plane about said pivot bolt;

said rearward portion further including pivot means for pivotal movement of said rearward portion about a transverse horizontal axis, said transverse horizontal axis located forwardly of and perpendicular to said pivot bolt, said pivot means allowing for pivotal movement of said rearward portion between a storage position, wherein the pivotal plane of the bars is generally vertical, and a towing position, wherein the pivotal plane of the bars is generally horizontal.

Reissue claim 7 is similar to reissue claim 1 except that in place of the last three clauses of reissue claim 1 there is a single clause that, instead of reciting a "pivot block" and related structural features, recites "pivot means for pivotal movement of said rearward portion about a transverse horizontal axis . . . ."

The substitute reissue declaration discusses the error of reciting a "pivot block" instead of "pivot means," and mentions the functions performed by the pivot means. However, reissue claim 7 appears to be broader than original patent claim 1 with respect to the relationship between the pivot means and the pivot bolt. Claim 1 of the original patent recites that the pivot bolt is "mounted through the upper and lower surfaces of said pivot block, rearwardly of and perpendicular to the pivot block pivot axis." Reissue claim 7 recites

that the "transverse horizontal axis," the pivot axis of the pivot means, is "located forwardly of and perpendicular to said pivot bolt," but does not appear to require that the pivot bolt be mounted through the upper and lower surfaces of the pivot means. This difference is not mentioned in the reissue declaration; therefore, the declaration does not satisfy the requirements of Rule 175 with respect to reissue claim 7.

*Reissue Claims 8–10*

■ Reissue claims 8–10 correspond to original claims 1–3. Because they are not changed from the claims of the original patent, they need not be supported by the reissue declaration. *See Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 882 F.2d 1556, 1566–67, 11 USPQ2d 1750, 1759 (Fed.Cir. 1989) (citing *Gage v. Herring*, 107 U.S. 640, 2 S.Ct. 819, 27 L.Ed. 601 (1883)). We reject Automatic's arguments that there is some significance in the fact that these claims were not included in the reissue application when it was first filed or in the fact that the examiner failed to renumber these claims as claims 1–3 of the reissue patent.

We have carefully considered and reject the parties' other arguments. Specifically, although Dethmers argues that an issued patent cannot be invalidated for failure to satisfy Rule 175, *Nupla* clearly holds the contrary. *Nupla*, 114 F.3d at 195, 42 USPQ2d at 1715 (affirming the district court's determination that a reissue patent was invalid because the reissue declaration did not satisfy the requirements of Rule 175). Moreover, we agree with the district court that Automatic's arguments regarding the nature of the errors corrected in the reissue patent and the lack of identity of invention between the reissue claims and the original patent claims do not withstand scrutiny. *See, e.g., Dethmers I*, 23 F.Supp.2d at 1014–20.

We therefore affirm the district court's judgment with respect to the invalidity of reissue claims 4–7, but reverse the district court's judgment with respect to the invalidity of reissue claims 1–3 and 8–10.

## II.

We turn now to Automatic's cross-appeal. As indicated above, the district court granted Dethmers' motion for summary judgment that it did not literally infringe the '166 patent. The court also ruled that prosecution history estoppel barred application of the doctrine of equivalents to the '166 patent. It is the latter ruling that Automatic appeals.

 Prosecution history estoppel is a legal limitation on the doctrine of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 586, 56 USPQ2d 1865, 1886 (Fed.Cir.2000) (en banc), *cert. granted*, —— U.S. ——, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001). We therefore review *de novo* the district court's determination that prosecution history estoppel prevents Automatic from asserting that Dethmers infringes the '166 patent under the doctrine of equivalents.

 When a claim is narrowed for any reason related to the statutory requirements for a patent, prosecution history estoppel will arise with respect to the amended claim limitation and will bar an application of the doctrine of equivalents with respect to that claim limitation. *Festo*, 234 F.3d at 563–64, 56 USPQ2d at 1868. The claim limitations that Automatic asserts are infringed by equivalents were amended during prosecution in a manner that narrowed the scope of the claims. Automatic argues that the amendments do not give rise to prosecution history estoppel because they were not made to avoid the prior art and because they were made voluntarily. *Festo* makes clear however, that amendments made for reasons other than to avoid prior art and voluntary

amendments can give rise to prosecution history estoppel. *Id.* Because Automatic has not established that the amendments were made for a purpose unrelated to patentability, we affirm the district court's determination that prosecution history estoppel bars the application of the doctrine of equivalents to the amended claim limitations, *see id.* at 586, 56 USPQ2d at 1886, and its grant of Dethmers' motion for summary judgment of non-infringement.

## CONCLUSION

With respect to Dethmers' appeal, we determine that the substitute reissue declaration supports claims 1–3 and 8–10 of U.S. Patent No. Re. 35,482 as required by Rule 175, but does not adequately support claims 4–7. With respect to Automatic's cross-appeal, we affirm the district court's decision that prosecution history estoppel bars application of the doctrine of equivalents. The case is remanded for further proceedings consistent with this opinion.

*AFFIRMED–IN–PART, REVERSED–IN–PART* and *REMANDED.*

## COSTS

Each party shall bear its own costs.

DYK, Circuit Judge, concurring-in-part and dissenting-in-part.

I respectfully dissent from the majority's refusal to defer to the PTO's interpretation of its own regulations. This case involves no issue of statutory construction. Nor does it involve any questions as to the validity of the 37 C.F.R. § 1.175 ("Rule 175"), which is plainly statutorily authorized. *See* 35 U.S.C. § 2; *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292 (2001). Rather, the sole issue is whether the Patent and Trademark Office ("PTO") properly interpreted its own regulation concerning the

requirements for a declaration in a reissue proceeding.

The PTO, at our invitation, has filed an *amicus curiae* brief urging that we give substantial deference to the PTO's interpretation.[1] The majority declines to give deference to the PTO's interpretation of its own regulation and holds that our earlier decisions in *In re Constant*, 827 F.2d 728, 3 USPQ2d 1479 (Fed.Cir.1987), and *Nupla Corp. v. IXL Manufacturing Co.*, 114 F.3d 191, 42 USPQ2d 1711 (Fed.Cir.1997), require us to apply a *de novo* standard of review. I disagree. Applying the proper standard of review, I conclude that we should reverse the district court's holding of invalidity as to all the claims.

The standard of review issue was not directly addressed in either *Constant* or *Nupla,* and those cases do not even mention the pertinent Supreme Court decisions, which are discussed below. The panel is not bound by an implied holding of our earlier decisions. We have recognized that a decision applying a particular rule is not binding precedent if the issue was not discussed by the court. *See, e.g., Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1346 (Fed.Cir.2001) (Although a prior decision of this court ruling on an issue may have implied that the lower court issued a final decision with respect to the issue, the question of "finality ... was raised neither by the parties nor *sua sponte* by [this] court. Because [the prior decision] did not confront and decide the same issue, it is not precedent on the question before us."); *United States v. County of Cook, Illinois,* 170 F.3d 1084, 1088 (Fed.Cir.1999) (stating that prior decisions of this court that did not squarely address an issue are not bind-

ing precedent); *Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.,* 937 F.2d 1572, 1581, 19 USPQ2d 1424, 1431 (Fed.Cir.1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises."); *see also Brown Shoe Co. v. United States,* 370 U.S. 294, 307, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962) ("[w]e are not bound by previous exercises of jurisdiction in cases in which our power to act was not questioned but was passed *sub silentio* ...."); *Brecht v. Abrahamson,* 507 U.S. 619, 631, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (reaffirming longstanding rule that if a decision does not "squarely addres[s][an] issue," a court remains "free to address the issue on the merits" in a subsequent case).

In any event, *Constant* and *Nupla* preceded the seminal Supreme Court decision in *Dickinson v. Zurko,* 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d 1930 (1999). There the Supreme Court held that the standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, apply to our review of the PTO. *Id.* at 165, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d at 1937. Until that decision we had reviewed PTO fact-finding for clear error, rather than affirming the PTO's fact-finding unless it was arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence, as demanded by the APA. *Id.* at 153, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d at 1932. The Court rejected the argument that "review of the PTO's patent denials demands a stricter fact-related review standard than

---

1. The PTO urged that "the agency's interpretation and application of its own regulations ... should receive substantial deference, unless plainly erroneous. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)." In this case, the PTO argued substantial deference was due because "acceptance of the [substitute] declaration necessarily involved the agency's interpretation and application of its own regulation ... [and thus] the agency's interpretation and application should be deemed controlling unless plainly erroneous."

is applicable to other agencies." *Id.* at 165, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d at 1937. Thus, we were clearly told that under the APA the PTO is to be treated like any other agency.

Applying the approach of *Zurko,* I conclude that we are obligated by clear Supreme Court precedent to give deference to the PTO's own interpretation of its regulations. Recently, in *United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 121 S.Ct. 1433, 1445, 149 L.Ed.2d 401 (2001) the Court held that an agency's interpretation of its own regulations "attracts substantial judicial deference." There, the question was whether back wages should be taxed by reference to the year they should have been paid or by reference to the year they were actually paid. The Court deferred to the Internal Revenue Service's ("IRS") interpretation of its own regulations to resolve the question. *Id.* at 1444–45. Because the agency's interpretations of its regulations were reasonable, they were entitled to deference. *Id.*

This rule of deference is not new. Giving deference to agency interpretations of their own regulations has long been the rule. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1964) (holding that when "[w]hen faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.... When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order."); *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) (holding that an agency's interpretation of its own regulation is controlling unless plainly erroneous or inconsistent with the regulation); *see also Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.,* 435 U.S. 519, 524, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978) ("[T]his Court has for more than four decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments."); *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.,* 423 U.S. 326, 333–34, 96 S.Ct. 579, 46 L.Ed.2d 533 (1976) ("The Court, it is true, has power to affirm, modify, or set aside the order of the Commission in whole or in part.... But that authority is not power to exercise an essentially administrative function.").

We have frequently deferred to agency interpretations of their own rules, most recently, in *American Express Co. v. United States,* 262 F.3d 1376 (Fed.Cir.2001). In that case, a taxpayer contested the IRS's interpretation of its own Revenue Procedure to include certain revenue of the taxpayer as taxable income in a particular tax year. The Revenue Procedure at issue had been promulgated by the IRS to clarify the year in which certain income had to be included as taxable income. We held that when confronted with a question regarding the IRS's interpretation of its own Revenue Procedure that "substantial deference is paid to an agency's interpretations reflected in informal rulings." *Id.* at 1382–83 (citing *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Cleveland Indians Baseball Co.,* 121 S.Ct. at 1445; *So. Calif. Edison Co. v. United States,* 226 F.3d 1349, 1356–57 (Fed.Cir.2000)).

In other contexts we have even deferred to the PTO's interpretation of its own regulations. *See Hyatt v. Boone,* 146 F.3d 1348, 1355, 47 USPQ2d 1128, 1133 (Fed. Cir.1998). In *Hyatt,* the junior party in an interference proceeding challenged the effective filing date accorded to the senior party by the PTO. The senior party ob-

tained the challenged filing date through a chain of ten continuation applications, two of which the junior party alleged were invalid for failure to comply with certain regulations governing the prosecution of continuation applications in the PTO. Specifically, the junior party alleged that two of the ten applications were filed under the "streamlined" procedures of 37 C.F.R. § 1.60 ("Rule 60") with photocopies of the prior specification and prior oath, but contained amended claims. Because those applications contained amended claims, the junior party alleged that they required a new oath and thus could not properly have been filed under Rule 60. Neither the PTO nor the administrative patent judge in the interference proceeding found that Rule 60 had been violated. We stated that:

> The issue here raised is not one of substantive continuity of disclosure, but solely of whether a photocopy of the prior oath, instead of a new oath, was acceptable for filing, when it was in fact accepted for filing. *Any technical deficiency in meeting the formal requirements of Rule 60 must be viewed in light of the agency's acceptance of the applications as in compliance with the Rule.* Regularity of routine administrative procedures is presumed, and departure therefrom, should such have occurred, is not grounds of collateral attack. *Courts should not readily intervene in the day-to-day operations of an administrative agency, especially when the agency practice is in straightforward implementation of the statute.*

*Id.* at 1355–56, 47 USPQ2d at 1133 (emphases added). Thus, we found no error in the decisions of the PTO to grant, and

the administrative patent judge to uphold, the effective filing date accorded to the senior party. *Id.* at 1356, 47 USPQ2d at 1133.

Here, as in *American Express* and *Hyatt*, the agency has already decided the issue we now review. As the majority notes, the patent examiner rejected Dethmers's first reissue declaration because it failed to comply with Rule 175, but accepted the substitute declaration Dethmers submitted. *Ante* at 1368. The examiner demonstrated that he considered and decided the exact issue we now review. In *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994), the Supreme Court held that deference is due to an agency's interpretation of a regulation announced in agency proceedings, as is the case here. There, the Court gave deference to Secretary of Health and Human Service's interpretation, rendered in an administrative proceeding, of the Service's regulations to deny reimbursement for certain costs because "[w]e must give substantial deference to an agency's interpretation of its own regulations." *Id.*

There is simply no basis for treating the PTO differently from any other administrative agency. Indeed, there is more reason to defer to the PTO here. Rule 175 was promulgated under authority of 35 U.S.C. § 2(b)(2)(A) which authorizes the PTO to "establish regulations, not inconsistent with law, which shall govern the conduct of proceedings in the Office." Rule 175 is a procedural rule which sets forth a mechanism for the PTO to obtain the information it needs to determine if a reissue application complies with 35 U.S.C. § 251,[2] but does not involve a substantive

---

**2.** 35 U.S.C. § 251 permits reissue of a patent if the originally issued patent "through error without any deceptive intention, [is] deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent...."

interpretation of the statute. This delegation of authority to the PTO to promulgate rules governing its own procedure is appropriate because it "helps guarantee that the rules will be written by 'masters of the subject' ... who will be responsible for putting the rules into effect." *Cleveland Indians Baseball Co.*, 121 S.Ct. at 1444 (quoting *Nat'l Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979)). The PTO is a highly specialized agency charged with, *inter alia*, administering the grant and issuance of patents. This court does not sit as a committee of revision to perfect the PTO's internal administration of patent issuance procedures. *Cf. Cleveland Indians Baseball Co.*, 121 S.Ct. at 1445.

Applying the proper deferential standard of review, I, of course, agree with the majority's holding that claims 1–3 and 8–10 are not invalid. However, I disagree with the majority's holding that claims 4–7 are invalid. The fundamental difference between the PTO's interpretation of its regulation and the panel's interpretation is that the PTO requires reasonable compliance with the regulation's requirements while the panel allows almost no room for error, requiring almost perfect compliance. To be sure, the panel suggests that "word-for-word correspondence is [not] required between a reissue declaration and the changes made in a reissue application," *ante* at 1370, but in practice the panel finds minor departures from a strict reading of the rule to be fatal to the claims.

Reissue claim 4 depends from reissue claim 1 and further includes the limitations of application claim 2. The examiner's conclusion that the substitute declaration complies with the regulation by identifying the error of failing to include reissue claim 4 in the original patent is reasonable. The declaration states that it was error to include "the subject matter of [application] claims 2 and 3" in the originally issued claim 1.

From this it was reasonable for the examiner to conclude that it was error to include subject matter of application claim 2 in originally issued claim 1, and it was error to include subject matter of application claim 3 in originally issued claim 1. Interpretation of Rule 175 as not requiring separate mention of the failure to include a claim with the subject matter of claim 2 but without the subject matter of claim 3 was reasonable.

The examiner could also properly conclude that reissue claim 5 complies with the regulation. The majority attaches significance to the fact that reissue claim 5 depends from a claim (reissue claim 4) which the majority holds invalid. But this has no import since "dependent ... claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C. § 282. Next, the majority finds that the declaration does not support reissue claim 5 because it does not mention any error associated with a failure to include in the originally issued patent a dependent claim that is essentially the same as original claim 1. But Rule 175 only applies when the patentee "claimed more or less than he had a right to claim" in the original patent and only requires an explanation "specifying the excess or insufficiency in the claims." 37 C.F.R. § 1.175. Reissue claim 5, as the majority concedes, is "essentially of the same scope as original claim 1," *ante* at 1374–75, and thus the examiner could properly conclude that an explanation for it is not even required under Rule 175. Finally, the majority is correct to point out that "claim 5 does not correct any of the errors identified in the substitute reissue declaration," *ante* at 1375, but this is simply because it is substantially identical to original claim 1, and therefore the examiner could reasonably conclude that it need not (and necessarily *cannot*) correct any errors in the original patent. Under these circumstances, the examiner reasonably concluded that Rule 175 required nothing

more from the declaration with respect to reissue claim 5.

Although the majority holds that reissue claim 1 is supported by the substitute declaration, it finds reissue claim 6 invalid merely because the "text of the declaration does not mention the 'pivot member' limitation." *Ante* at 1375–76. But the declaration specifically mentions that it was error to "use . . . the potentially structurally limiting term 'pivot block' in original [application] claim 4 . . . . [when it was] believed that the term 'pivot means' would have been equally allowable. . . ." The declaration then explained how this error arose and that it arose without deceptive intent. It was reasonable for the examiner to conclude that the regulation's requirements were satisfied by use of the term "pivot member" to correct the use of the "potentially structurally limiting term 'pivot block'" in the originally issue patent claim, and the declaration supports the examiner's conclusion.

The majority points out that reissue claim 7 "appears to be broader than original patent claim 1. . . ." *Ante* at 1376.

This is exactly so and is entirely proper, because the purpose of the broadening reissue (as the patentee stated in the Rule 175 declaration) was to correct the patentee's failure to claim all that he had a right to claim in the originally issued patent. The majority invalidates reissue claim 7 because that claim does not include limiting structural language that existed in originally issued claim 1. But the patentee explained this in his declaration when he pointed out the "second error which arose in the claims [due to] the use of the potentially structurally limiting term 'pivot block' in the original [application] claim 4. . . ." The patentee explained in his declaration that he sought to correct this error by using the term "pivot means." The examiner's interpretation of Rule 175 to allow such support was reasonable.

For these reasons, I respectfully dissent from the majority's holding that claims 4–7 are invalid.