**DETHMERS MANUFACTURING COMPANY, INC., Plaintiff,**

v.

**AUTOMATIC EQUIPMENT MFG. CO., Defendant.**

**No. C 96–4061–MWB.**

United States District Court, N.D. Iowa, Western Division.

Jan. 14, 2004.

Brian J. Laurenzo, Michael C. Gilchrist, Dorsey & Whitney, David A. Tank, Davis, Brown, Koehn, Shors & Roberts, Des Moines, IA, for Plaintiff/Counter Defendant.

Daniel L. Hartnett, Crary–Huff–Inkster–Hecht–Sheehan–Ringenberg–Hartnett–Storm, Sioux City, IA, Donald R. Schoonover, Schoonover Law Firm, Fremont Hills, MO, John T. Wiedemann, Warren M. Haines, II, Calfee, Halter & Griswold, LLP, Cleveland, OH, Tim Engler, Harding, Shultz & Downs, Lincoln, NE, William A. Rudy, Lathrop & Gage, Kansas City, MO, for Defendant.

Daniel L. Hartnett, Crary–Huff–Inkster–Hecht–Sheehan–Ringenberg–Hartnett–Storm, Sioux City, IA, Tim Engler, Harding Shultz & Downs, Lincoln, NE, Warren M. Haines, II, Calfee, Halter &

Griswold, LLP, Cleveland, OH, Donald R. Schoonover, Schoonover Law Firm, Fremont Hills, MO, William A. Rudy, Lathrop & Gage, Kansas City, MO, for Counter Claimant.

MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR RECONSIDERATION OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF RE. 35,482

BENNETT, Chief Judge.

## TABLE OF CONTENTS

*I.* *INTRODUCTION* ............................................................ 905
 *A.* *Factual Background* ........................................... 905
 *B.* *Procedural Background* ....................................... 907

*II.* *LEGAL ANALYSIS* ....................................................... 909
 *A.* *Arguments Of The Parties* ................................... 909
 *1.* *Automatic's opening argument* ........................ 909
 *2.* *Dethmers's response* .................................. 910
 *3.* *Automatic's reply* .................................... 911
 *B.* *Standards For Reconsideration* ............................... 911
 *1.* *The "law of the case" doctrine* ....................... 911
 *2.* *Strands of the doctrine* .............................. 912
 *a.* *Reconsideration without intervening appellate review* ........... 912
 *b.* *Reconsideration after appellate review* ...................... 912
 *3.* *The prerequisite to application of the "law of the case" doctrine* ..... 914
 *C.* *Change In Controlling Legal Authority* ....................... 915
 *1.* *The Supreme Court's decision in Festo* ............... 916
 *2.* *"Application" of Festo in Eggert* ..................... 918
 *3.* *Is the Supreme Court's rule "new"?* .................. 920
 *4.* *Application of the "Festo rule" by the appellate court in this case* ..... 921

*III.* *CONCLUSION* .......................................................... 922

In a previous ruling in this patent infringement case, this court observed that the adage "the devil is in the details" is perhaps particularly applicable to patent law. *See Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 23 F.Supp.2d 974, 981 (N.D.Iowa 1998) (*Dethmers I* ). Indeed, it was on the basis of the "detail" that the addition of certain limitations to claims in an original patent application had *not* been made in an effort to overcome *a prior art rejection* that this court declined the defendant's invitation to apply the "recapture rule" to invalidate the plaintiff's subsequent reissue patent, which lacked those limitations. However, the defendant asserts that the Supreme Court has since changed the "details" of the "recapture rule" in *Festo Corp. v. Shoketsu Kinzoku*

*Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002), thereby justifying reconsideration of the defendant's motion for summary judgment of invalidity of the plaintiff's reissue patent. Consequently, this court is once again "bedeviled" by "details" in the application of the "recapture rule" in this case.

## I. INTRODUCTION

### A. Factual Background

Whether or not a party is entitled to summary judgment ordinarily turns on whether or not there are genuine issues of material fact, *see* FED. R. CIV. P. 56(c), even in patent cases. *See, e.g., Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed.Cir.1994) ("Summary judgment is

appropriate in a patent case, as in other cases. . . ."); *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994) ("The grant of summary judgment [in a patent case] is appropriate where the standards set forth in Rule 56(c) are satisfied."). However, in this case, the parties dispute the proper resolution of questions of law, which may be particularly amenable to summary judgment. *See, e.g., Dana Corp. v. United States,* 174 F.3d 1344, 1347 (Fed. Cir.1999) ("Summary judgment was appropriate here because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law."). Nevertheless, some statement of the factual background is appropriate to put in context the issues presented.

The pertinent factual background to this case can be summarized briefly from a much more extensive discussion of the factual background in the court's ruling on the defendant's original motion for summary judgment of patent invalidity. *See Dethmers I,* 23 F.Supp.2d at 983–98. Both plaintiff Dethmers Manufacturing Company (Dethmers) and defendant Automatic Equipment Manufacturing (Automatic) make tow bars, based on their respective patents, for towing automobiles behind recreational vehicles. Two of Dethmers's patents are at issue in this ruling. The first is United States Patent No. 5,232,240 (the '240 patent), which is a patent for a "Towing Hitch," and the second is a reissue of the '240 patent, United States Patent No. Re32,482 (the Re482 patent). Although it is not at issue in the present ruling, Automatic's patent for its tow bars, United States Patent No. 5,356,166 (the '166 patent), was also at issue in this litigation and in previous rulings on dispositive motions.

Key factual matters include the prosecution history of the original '240 patent and the relationship between that patent and the Re482 patent. In the course of the prosecution of the original '240 patent by the inventor, the examiner pointed out that the connection of the apparatus by "pivot arms" to the towed vehicle stated in dependent claim 2 of the application contradicted the connection means stated in independent claim 1 of the application. Consequently, the applicant elected to use "pivot arms" as the only means of connection in the patent to overcome the patent examiner's rejection of the patent application for internal inconsistencies pursuant to 35 U.S.C. § 112. This court concluded in *Dethmers I,* and the parties do not dispute here, that the election of "pivot arms" as the connection means was not made to surrender the subject matter of other connection means in an effort to overcome a prior art rejection. *See id.* at 1018. Similarly, this court concluded in *Dethmers I*—and, again, the parties do not dispute that conclusion here—that the choice of "pivot block" language in application claim 4 was not to overcome a prior art rejection, but to overcome the examiner's objection concerning a lack of connection between certain pivot means in the apparatus and the rear portion of the apparatus. *Id.* With the amendments to include both "pivot arms" and a "pivot block," the '240 patent issued on August 3, 1993.

However, after Dethmers acquired the '240 patent from the inventor, Dethmers sought a reissue of the patent on the ground that " 'the original patent [was] partly invalid because of errors without any deceptive intent on the part of [the inventor].' " *See id.* at 991 (quoting the reissue application declaration). The reissue application specified that " '[t]he errors were in [the inventor] claiming less than he had a right to claim in the patent.' " *Id.* (again quoting the reissue application declaration). To overcome these "errors," Dethmers submitted amendments to the

claims of the '240 patent, which involved both alterations and deletions. *See id.* This court catalogued the differences between the '240 patent and the Re482 patent in some detail in *Dethmers I. See id.* at 991, 1018. For present purposes, suffice it to say that the Re482 patent eliminates any reference to a "pivot arms" limitation and replaces references to a "pivot block" in the '240 patent with references to a "pivot member" or "pivot means" in the Re482 patent. The reissue patent was eventually issued on March 25, 1997.

In this litigation, Dethmers contends, *inter alia,* that Automatic is infringing the Re482 patent. However, Automatic denies infringement and contends, further, that the Re482 patent is invalid, in large part owing to improper changes from the original '240 patent.

### B. Procedural Background

Although the procedural background to this case is quite complicated, the court will focus here on the parts of the procedural background that are actually of present significance. Dethmers filed this action on June 26, 1996, seeking primarily a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, of non-infringement of Automatic's '166 patent and declaratory, injunctive, and damages relief for Automatic's alleged infringement of Dethmers's Re482 patent. Dethmers amended its complaint on April 24, 1997, and again on November 20, 1997, adding other claims, but the patent infringement claims are the only ones pertinent to the present discussion. Automatic answered the original complaint and the first amended complaint, and asserted various counterclaims, but moved to dismiss or, in the alternative, for summary judgment on various claims and issues in the second amended complaint. Then, on March 11, 1998, Automatic filed a motion for summary judgment on the invalidity of Deth-

mers's Re482 patent. On June 12, 1998, Dethmers moved for summary judgment or partial summary judgment to the effect that it is not infringing Automatic's '166 patent. The court disposed of these motions in an extensive ruling on September 29, 1998. *See Dethmers I,* 23 F.Supp.2d at 1044.

Only one part of the ruling in *Dethmers I* is presently at issue, however. That part is the section of the ruling in which this court addressed, and rejected, Automatic's contentions that the alleged "errors in the patent," on which the reissue patent was sought, were insufficient to permit reissuance of the '240 patent as the Re482 patent. *See Dethmers I,* 23 F.Supp.2d at 1014–19. More specifically, in the pertinent portion of the ruling, this court considered Automatic's argument that the reissue patent violated the "recapture rule," because the asserted "error" on which reissuance was sought purportedly attempted to remove limitations heavily relied upon to obtain allowance of the original patent claims. This court applied the pertinent steps in the four-step analysis of whether the "recapture rule" applies, as stated in *Hester Industries, Inc. v. Stein, Inc.,* 142 F.3d 1472, 1480–82 (Fed.Cir.), *cert. denied,* 525 U.S. 947, 119 S.Ct. 372, 142 L.Ed.2d 308 (1998), to resolve this part of Automatic's challenge to the validity of the Re482 patent. In so doing, this court concluded (1) that the claims of the Re482 patent were "broader" than the claims of the original '240 patent, because the Re482 patent did not include the "pivot arms" limitations of the original patent claims, but (2) that the broader aspects of the reissue patent claims did not relate to subject matter surrendered in the prosecution of the original patent, because the amendment of the original patent application to include "pivot arms" limitations was not made in an effort to overcome *a prior*

*art rejection.* *Dethmers I*, 23 F.Supp.2d at 1018.

In *Dethmers I*, this court also rejected Automatic's argument that the '240 patent and the Re482 patent were not for the same general invention, *see id.* at 1019–20, but granted summary judgment in Automatic's favor on invalidity of the Re482 patent in its entirety on the ground that the declaration in support of the reissue patent was defective. *Id.* at 1020–26. Unlike this court's ruling on the "recapture rule" issue, this court's dispositions of the "same invention" and "reissue declaration" issues are not *directly* at issue in Automatic's motion for reconsideration of its motion for patent invalidity.

After a considerable amount of further litigation, *see Dethmers Mfg. Co., Inc. v. Automatic Equipment Mfg. Co.*, 70 F.Supp.2d 944 (N.D.Iowa 1999) (*Dethmers II*), and *Dethmers Mfg. Co., Inc. v. Automatic Equipment Mfg. Co.*, 73 F.Supp.2d 997 (N.D.Iowa 1999) (*Dethmers III*), this court entered final judgment pursuant to its rulings under Rule 54(b) of the Federal Rules of Civil Procedure, clearing the way for appellate review. *See Dethmers Mfg. Co., Inc. v. Automatic Equipment Mfg. Co.*, 189 F.R.D. 526 (N.D.Iowa 1999) (*Dethmers IV*). Dethmers then appealed this court's determination that the Re482 patent is invalid, and Automatic cross-appealed the grant of Dethmers's motion for summary judgment of non-infringement of Automatic's '166 patent. *See Dethmers Mfg. Co. v. Automatic Equip. Mfg.*, 272 F.3d 1365 (Fed.Cir.2001) (*Dethmers App. I*).

The Federal Circuit Court of Appeals affirmed in part and reversed in part this court's determination that the Re482 patent was invalid in its entirety on the basis of a defective reissue declaration. Specifically, the appellate court held that the substitute reissue declaration supported claims 1–3 and 8–10 of the Re482 patent, but did not adequately support claims 4–7. *See Dethmers App. I*, 272 F.3d at 1377. Although Dethmers had appealed only this court's determination that the Re482 patent was invalid owing to a defective declaration in the reissue application, Automatic reasserted on appeal two arguments actually rejected by this court as alternative grounds for affirming this court's invalidation of the Re482 patent in its entirety. Those arguments were (1) Automatic's argument concerning lack of appropriate "error in the patent," including its argument for applicability of the "recapture rule," and (2) Automatic's argument that the original and reissue patents were not for the "same invention." However, the Federal Circuit Court of Appeals summarily rejected Automatic's alternative arguments, as follows:

> We have carefully considered and reject the parties' other arguments.... [W]e agree with the district court that Automatic's arguments regarding the nature of the errors corrected in the reissue patent and the lack of identity of invention between the reissue claims and the original patent claims do not withstand scrutiny. *See, e.g., Dethmers I*, 23 F.Supp.2d at 1014–20.

*Dethmers App. I*, 272 F.3d at 1376. The Federal Circuit Court of Appeals denied a petition for rehearing and rehearing *en banc, see Dethmers Mfg. Co. v. Automatic Equip. Mfg.*, 293 F.3d 1364 (Fed.Cir.2002) (*Dethmers App. II*), and the Supreme Court subsequently denied a petition for certiorari. *See Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, —— U.S. ——, 123 S.Ct. 2637, 156 L.Ed.2d 655 (2003). Consequently, this matter was remanded to this court pursuant to the mandate of the Federal Circuit Court of Appeals, as set forth in its opinion in *Dethmers App. I*, for further litigation of Dethmers's claim

of infringement by Automatic of the Re482 patent.

On remand, the first significant procedural milestone for present purposes was Automatic's filing on October 31, 2003, of its Motion For Reconsideration Of Motion For Summary Judgment Of Invalidity Of RE. 35,482 (docket no. 314), that is, Automatic's original March 11, 1998, motion for summary judgment on the invalidity of Dethmers's Re482 patent, which this court disposed of in *Dethmers I*.[1] One of the issues, to be determined below, is whether and to what extent the Federal Circuit Court of Appeals considered on appeal the issues that Automatic now asks this court to reconsider. Dethmers resisted Automatic's motion on November 26, 2003 (docket no. 317), and Automatic filed a reply in further support of its motion on December 12, 2003 (docket no. 320). Neither of the parties requested oral arguments on the motion for reconsideration of summary judgment in the manner required by Local Rules 7.1(c) and 56.1(f). *See* N.D. IA. L.R. 7.1(c) & 56.1(f). Therefore, Automatic's motion for reconsideration is fully submitted on the written submissions.

## II. LEGAL ANALYSIS

### A. Arguments Of The Parties

#### 1. Automatic's opening argument

Automatic's principal argument is that *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002), requires a different result from that reached by this court on the applicability of the "recapture rule" to the Re482 patent. Automatic contends that, in *Festo*, the Supreme Court reexamined the principles of prosecution history estoppel, a doctrine that Automatic asserts is analogous to the "recapture rule" in all pertinent respects, and held that a narrowing amendment made to satisfy *any requirement* of the Patent Act, not just a narrowing amendment *to overcome a prior art rejection*, gives rise to an estoppel on the scope of the patent. Automatic contends that the Board of Patent Appeals of the Patent and Trademark Office has since recognized that the Supreme Court's decision in *Festo* is also relevant to the analysis of whether reissue claims are barred by the "recapture rule," citing *EX PARTE EGGERT*, 67 U.S.P.Q.2d 1716, 1722 (Bd.Pat.App. & Interf.2003). Thus, Automatic contends, under the "new analysis" required by *Festo*, the proper analysis of whether the applicant has disavowed broader subject matter—for purposes of the "recapture rule" as well as prosecution history estoppel—considers whether the narrowing amendment was made to satisfy *any* requirement of the Patent Act, be it to avoid the prior art *or* to comply with 35 U.S.C. § 112.

Applying this "new analysis" here, Automatic argues that the amendment of the original claims of the '240 patent to include "pivot arms" constituted the surrender of subject matter within the "recapture rule" analysis, because it involved an amendment required as a condition of patentability, even though that amendment was not for the purpose of overcoming a prior art rejection. Thus, Automatic contends that the inclusion of the "pivot arms" limitation

1. In the alternative, Automatic styles its motion as a Supplemental Motion For Summary Judgment Of Invalidity Of RE. 35,482 For Failure To Comply With The Laws Providing For Reissue Of A United States Patent. However, the court finds that the "alternative" motion cannot be granted, if the motion for "reconsideration" is denied, because the "alternative" motion involves precisely the same grounds as the motion to "reconsider." Therefore, the court will not consider the "alternative" motion separately.

constituted a concession of an inability to claim the broader subject matter without "pivot arms." That being so, Automatic argues that the Re482 patent improperly attempts to recapture surrendered subject matter by omitting the "pivot arms" limitations in its claims. In other words, Automatic argues that the Re482 patent is not only broader than the original '240 patent, but that subject matter surrendered in the prosecution of the '240 patent has crept back into the reissue patent. Automatic argues, further, that the reissue claims were not otherwise materially narrowed by inclusion of the "pivot means," thereby escaping application of the "recapture rule," because the "pivot means" amendments in the Re482 application were not directly pertinent to the subject matter surrendered during prosecution of the original '240 patent claims.

### 2. *Dethmers's response*

Dethmers's first argument in response is that the "law of the case" doctrine—and more precisely, the "mandate rule," which leaves a lower court with no discretion to disregard or deviate from the law of the case as articulated by a reviewing court—precludes reconsideration by this court of its summary judgment ruling with regard to the effect of the "recapture rule." More specifically, Dethmers argues that, in reviewing this court's ruling on the motion for summary judgment on invalidity of the Re482 patent, the Federal Circuit Court of Appeals has already ruled on the effect of the "recapture rule" in this case, affirming this court's determination in that regard. Dethmers argues that, as a consequence of the appellate review and ruling, this court has no power or authority to deviate from the mandate issued by the appellate court by way of "reconsideration" of decided issues.

Furthermore, Dethmers argues that the intervening decision of the Supreme Court in *Festo* does not provide a basis for avoiding application of the mandate rule, because the Supreme Court's decision in *Festo* did not address, let alone change, controlling law on the "recapture rule." Indeed, Dethmers points out that the Supreme Court's decision in *Festo* does not even mention the "recapture rule"; instead, it considers only the principles of prosecution history estoppel. Moreover, Dethmers points out that, prior to the Supreme Court's decision in *Festo*, the Federal Circuit Court of Appeals had *already* established the rule relating to prosecution history estoppel later affirmed by the Supreme Court, *see Festo Corp. v. Shoketsu Kinzoku Kabushiki, Ltd.*, 234 F.3d 558, 563–64 (Fed.Cir.2000) (*en banc*) (*Festo App. I*), *vacated and remanded on other grounds*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). More importantly, Dethmers argues, the Federal Circuit Court of Appeals *had already* relied on its own prior statement of the principles of prosecution history estoppel (as later affirmed by the Supreme Court in *Festo*) *in this case*, with regard to Automatic's '166 patent, *see Dethmers App. I*, 272 F.3d at 1377, and did so in the very same decision in which it affirmed this court's ruling that the "recapture rule" does not invalidate Dethmers's Re482 patent. *See id.* at 1376.

In the alternative, Dethmers argues that the "recapture rule" is not violated with regard to claims 1 through 3 of the Re482 patent, because the reissue claims are actually *narrower* than the claims of the original '240 patent, owing to the inclusion of the "pivot means" limitation in the reissue claims. Consequently, Dethmers contends that there is no reclaiming of surrendered subject matter in the Re482 patent to which the "recapture rule" might apply. More specifically, Dethmers argues (1)

that the amendment of the original '240 patent claims to include pivot arms was not for the purpose of overcoming a prior art rejection, so that the "recapture rule" simply does not apply; (2) that, for the "recapture rule" to apply, any surrender of subject matter would have to be the result of diminution of the scope of the original claim, not merely in the deletion of any particular limitation, which is the situation that obtains here; and (3) that the reissue claims are actually materially *narrower* than the original claims, owing to the inclusion of the "pivot means" limitations in the reissue claims, which are absent from the original '240 patent claims.

### 3. Automatic's reply

In reply, Automatic argues that the "law of the case" doctrine is not applicable, because the Federal Circuit Court of Appeals was only presented with an appeal of this court's determination that the reissue patent application failed to comply with the requirements for a reissue declaration in 37 C.F.R. § 1.175; thus, Automatic contends, the appellate court never decided the issues now presented by Automatic's motion to reconsider. In this regard, Automatic argues that the *dicta* statement on which Dethmers relies as showing determination by the appellate court of the issue now presented did not even mention the "recapture rule." Moreover, to the extent that the appellate court might have addressed the "recapture rule" issues, Automatic contends that the appellate court addressed those issues only as Automatic had framed them at that time, but did not consider the "new" arguments that Automatic now asserts. Automatic also asserts that Dethmers has mischaracterized and misapplied the "recapture rule," because the "recapture rule" is analogous to prosecution history estoppel, and *does* apply to a single limitation, even if there is a narrowing amendment, at least where the narrow-

ing amendment is unrelated to the subject matter originally surrendered.

### B. Standards For Reconsideration

### 1. The "law of the case" doctrine

■ Dethmers contends, and this court agrees, that reconsideration of Automatic's original motion for summary judgment on invalidity of the Re482 patent is governed by the judicially-created "law of the case" doctrine and/or exceptions to that doctrine. *See, e.g., Suel v. Secretary of Health & Human Servs.*, 192 F.3d 981, 984 (Fed.Cir. 1999) ("Law of the case is a judicially created doctrine."). "Under the doctrine of the law of the case, 'a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation.'" *Augustine v. Principi*, 343 F.3d 1334, 1339 (Fed.Cir.2003) (quoting *Suel*, 192 F.3d at 985); *Gould, Inc. v. United States*, 67 F.3d 925, 930 (Fed.Cir. 1995) (" 'The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts.'") (quoting *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1550 (Fed.Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988), *overruled on other grounds, A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed.Cir.1992)).

However, the "law of the case" doctrine means different things in different contexts:

The [law of the case] doctrine ... is applied more or less strictly depending on the circumstances of the case. When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand. At the trial level however, the law of the case is little more than a

management practice to permit logical progression toward judgment. Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered.

*Jamesbury Corp.*, 839 F.2d at 1550 (footnotes and quotation marks omitted). It is not immediately apparent which strand of the "law of the case" doctrine applies here, where this court has denied the portion of Automatic's motion for summary judgment relying on the "recapture rule," but granted summary judgment in Automatic's favor on other issues of invalidity of the Re482 patent, then entered final judgment pursuant to Rule 54(b); the Federal Circuit Court of Appeals has reversed in part and affirmed in part this court's summary judgment ruling, but left standing the portion of the summary judgment ruling rejecting applicability of the "recapture rule"; and Automatic now seeks reconsideration of its motion for summary judgment on the "recapture rule" issues previously decided by this court. Therefore, the court will probe further the differences between the application of the "law of the case" doctrine where there has been no intervening appellate review and where there has been such review to try to determine which circumstance obtains here.

### 2. Strands of the doctrine

#### a. Reconsideration without intervening appellate review

■ Where a district court has denied summary judgment, without intervening appellate review, the standard for reconsideration is the following:

The standard to be applied by a district court in reconsidering a motion for summary judgment was set out in *Corporacion de Mercadeo Agricola v. Mellon*

*Bank International*, [608 F.2d 43 (2d Cir.1979) ]:

[O]n a renewed motion for summary judgment before a second judge, the district court must balance the need for finality against the forcefulness of any new evidence and the demands of justice. *With respect to a non-appealable denial of summary judgment, the law of the case is not a limit on the court's jurisdiction, but a rule of practice which may be departed from in the sound discretion of the district court. The first judge always has the power to change a ruling; further reflection may allow a better informed ruling in accordance with the conscience of the court. A fortiori, if the first judge can change his mind after denying summary judgment, and change his ruling, a second judge should have and does have the power to do so as well.*

[*Corporacion de Mercadeo Agricola*, 608 F.2d at 48.]

*Jamesbury Corp.*, 839 F.2d at 1551 (emphasis added). Thus, the standard for reconsideration of a prior summary judgment ruling by the trial court—at least in the absence of an intervening appeal—is quite generous.

#### b. Reconsideration after appellate review

■ On the other hand, the Federal Circuit Court of Appeals recently cited with approval a venerable case stating a much stricter standard for "reconsideration" after appellate review: " '[O]nce a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit.' " *See Augustine v. Principi*, 343 F.3d 1334, 1339 (Fed. Cir.2003) (quoting *United States v. Turtle Mountain Band of Chippewa Indians*, 222 Ct.Cl. 1, 612 F.2d 517, 520 (1979)). "Rea-

sons that may warrant departure from the law of the case … include the discovery of new and different material evidence that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice." *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed.Cir.2001) (citing *Smith International Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1576 (Fed.Cir.1985)); *Gould, Inc.*, 67 F.3d at 930 ("Under this doctrine a court adheres to a decision in a prior appeal in the same case unless one of three exceptional circumstances exist: (1) the evidence in a subsequent trial is substantially different; (2) controlling authority has since made a contrary decision of the law applicable to the issues; or (3) the earlier ruling was clearly erroneous and would work a manifest injustice."). This standard is, if anything, stricter still in patent cases:

> [I]n patent cases, where Congress has made special provision for interlocutory appeals, *see* 28 U.S.C. § 1292(c)(2), adherence to the law-of-the-case doctrine is especially important, as there are more opportunities for a party dissatisfied with a ruling from one panel to seek a different result from a second.

As a general matter, courts apply the law-of-the-case doctrine except when the case for departure is exceptionally clear, either because the controlling law has changed or the earlier decision is clearly erroneous and would lead to manifest injustice. *See Mendenhall v. Barber–Greene Co.*, 26 F.3d 1573, 1582, 31 USPQ2d 1001, 1007 (Fed.Cir.), *cert. denied*, 513 U.S. 1018, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994); *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900, 221 USPQ 669, 679 (Fed.Cir.) (departures from the law of the case doctrine occur "very infrequently"; the clearly erroneous/manifest injustice ex-

ception is "stringent" and requires a "strong showing of clear error"), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); *see also Smith Intern., Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1576–80, 225 USPQ 889, 891–94 (Fed.Cir.), *cert. denied*, 474 U.S. 827, 106 S.Ct. 87, 88 L.Ed.2d 71 (1985).

*Hughes Aircraft Co. v. United States*, 86 F.3d 1566, 1578 (Fed.Cir.1996) (Bryson, J., concurring), *cert. granted and judgment vacated on other grounds*, 520 U.S. 1183, 117 S.Ct. 1466, 137 L.Ed.2d 680 (1997). Thus, a much stricter standard applies when there has been intervening appellate review of pertinent issues: When there has been intervening appellate review, only certain exceptional circumstances will warrant departure from the "law of the case" as determined by the appellate court.

■ As Dethmers suggests, the "mandate rule" is a related doctrine, or more specific articulation of the "law of the case" doctrine, which applies following appellate review. In pertinent part, the "mandate rule" requires a district court "to comply strictly with the mandate rendered by the reviewing court." *See, e.g., Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir.2001); *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1348 & n. 1 (Fed.Cir. 2001) (discussing the effects of the "mandate rule"), *cert. denied*, 534 U.S. 1035, 122 S.Ct. 580, 151 L.Ed.2d 451 (2001); *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir.1995) (describing the "law of the case" doctrine and the "mandate rule" as "close relation[s]." as both require the lower court to adhere to decisions made in prior proceedings, and in the case of the latter rule, " 'inferior tribunals are bound to honor the mandate of superior courts within a single judicial system' ") (quoting 18 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 4478 at 792). Thus, where the appellate court has spoken, this

court's ability to "reconsider" an issue is extremely limited.

### 3. The prerequisite to application of the "law of the case" doctrine

■ The key to determining which "law of the case" standard applies here may be to consider carefully what the Federal Circuit Court of Appeals recently described as "a necessary predicate to application" of the doctrine, which is "that the legal issue in question has actually been decided." *Augustine*, 343 F.3d at 1339. Similarly, under the "mandate rule," while a district court is "bound to follow the mandate, and the mandate 'controls all matters within its scope, ... a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal.' " *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126–27 (10th Cir.2003) (quoting *Newball v. Offshore Logistics Int'l*, 803 F.2d 821, 826 (5th Cir.1986)). Here, Dethmers contends that the Federal Circuit Court of Appeals has already decided on appeal in this case the issues that Automatic asserts on "reconsideration." In contrast, Automatic contends that the Federal Circuit Court of Appeals did not have to address those issues, because neither party appealed them, and to the extent that the appellate court did consider them, that court did no more than address in *dicta* the arguments that Automatic had raised *up to that point in the litigation*, but not the *new arguments* that Automatic now asserts, by which Automatic apparently means the arguments concerning the impact of the Supreme Court's decision in *Festo*.

First, there is no doubt that *this* court actually, and expressly, decided the question of whether or not the "recapture rule" was applicable to the Re482 patent, and concluded that the rule was *not* applicable. *See Dethmers I*, 23 F.Supp.2d at 1014–19.

Nor can there be any doubt that the Federal Circuit Court of Appeals considered, and rejected, Automatic's arguments concerning application of the "recapture rule," albeit summarily. The appellate court explained that it had "carefully considered and reject[ed]" Automatic's arguments "regarding the nature of the errors corrected in the reissue patent," *see Dethmers App. I*, 272 F.3d at 1376, which arguments, both in this court and before the appellate court, had centered on applicability of the "recapture rule." *See Dethmers I*, 23 F.Supp.2d at 1014–19; *and compare* Dethmers's Exhibits In Support Of Resistance, Exhibit A (excerpt from Automatic's brief on appeal). Indeed, the appellate court cited precisely the portion of this court's decision discussing the "recapture rule" as its basis for rejecting Automatic's "errors corrected" argument on appeal. *See Dethmers App. I*, 272 F.3d at 1376 ("[W]e agree with the district court that Automatic's arguments regarding the nature of the errors corrected in the reissue patent ... do not withstand scrutiny. *See, e.g., Dethmers I*, 23 F.Supp.2d at 1014–20."). Under the circumstances, express mention of the "recapture rule" in the appellate decision was not required to demonstrate that the appellate court had actually considered and decided the question of applicability of the "recapture rule" to the Re482 patent.

Automatic nevertheless argues that the portion of the appellate court's decision relied upon by Dethmers was merely *dicta*. Automatic argues that Dethmers appealed only that part of this court's decision concerning a defective reissue declaration, and Automatic did *not* cross-appeal that portion of this court's decision rejecting application of the "recapture rule." Thus, Automatic contends that the Federal Circuit Court of Appeals was never required to consider the applicability of the "recapture rule." Automatic's argument is unavailing, howev-

er, because the appellate court did not affirm this court's invalidation of the Re482 patent in its entirety on the ground that the reissue declaration was defective. Instead, the appellate court held that the reissue declaration was only defective as to claims 4–7, but that the declaration was sufficient as to claims 1–3 and 8–10, so that those claims remain valid. Thus, Automatic's reassertion on appeal of the "errors corrected" argument, including its reassertion of the applicability of the "recapture rule," would have been the only basis on which the appellate court could have affirmed invalidation of claims 1–3 and 8–10 of the reissue patent. As such, the appellate court's consideration of the "recapture rule," as reasserted on appeal by Automatic, and rejection of the applicability of the "recapture rule" in this case, was essential to the appellate court's decision that claims 1–3 and 8–10 of the Re482 patent were valid.

Therefore, this court finds that the "strict" strand of the "law of the case" doctrine or "mandate rule" is applicable here: This court must follow the ruling of the Federal Circuit Court of Appeals affirming the inapplicability of the "recapture rule" in this case, " 'right or wrong,' " at least in the absence of any " 'exceptional circumstances.' " *Augustine*, 343 F.3d at 1339 (quoting *Turtle Mountain Band of Chippewa Indians*, 612 F.2d at 520).

Automatic also contends that the Federal Circuit Court of Appeals did not consider on appeal in this case Automatic's "new" arguments concerning the applicability of the "recapture rule," which the court takes to mean Automatic's arguments concerning the impact of the Supreme Court's decision in *Festo*. However, that contention is properly an argument for an *exception* to the "law of the case" doctrine after appellate review, *i.e.*,

an assertion that there has been "an intervening change of controlling legal authority." *Intergraph Corp.*, 253 F.3d at 698; *Gould, Inc.*, 67 F.3d at 930 (identifying one of three applicable exceptions to the "law of the case" doctrine as "controlling authority has since made a contrary decision of the law applicable to the issue"). The court, therefore, turns to the principal issue here, which is whether the Supreme Court's decision in *Festo* is a "change in controlling legal authority" regarding applicability of the "recapture rule," which requires a different result from that reached by this court and the Federal Circuit Court of Appeals with regard to the validity of the Re482 patent.

### C. Change In Controlling Legal Authority

Automatic argues that the Supreme Court's decision in *Festo* changed the scope of the "recapture rule," and that the Board of Patent Appeals of the Patent and Trademark Office has since recognized that the Supreme Court's decision in *Festo* is also relevant to the analysis of whether reissue claims are barred by the "recapture rule." However, Dethmers argues that the Supreme Court's decision in *Festo* considered only the scope of prosecution history estoppel, without ever mentioning, let alone considering, the scope of the "recapture rule." Dethmers also argues that the Supreme Court's decision in *Festo* was not even a "change in controlling authority" with respect to the scope of prosecution history estoppel, because the Supreme Court merely affirmed an *en banc* decision of the Federal Circuit Court of Appeals in *Festo* stating precisely the same rule. Moreover, Dethmers points out that, *in this case*, the Federal Circuit Court of Appeals applied that court's *en banc* decision in *Festo* to prosecution history estoppel issues, while affirming this court's determination that the "recapture rule" is

applicable only to amendments to overcome prior art rejections. This court's analysis of the issue of the import of the Supreme Court's decision in *Festo* necessarily begins with an examination of that decision.

### 1. The Supreme Court's decision in Festo

In *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002), the Supreme Court was required "to address once again the relation between two patent law concepts, the doctrine of equivalents and the rule of prosecution history estoppel." *Festo*, 535 U.S. at 726, 122 S.Ct. 1831. The Court explained the context of, and issues in, its ruling more specifically, as follows:

> In the decision now under review the Court of Appeals for the Federal Circuit held that by narrowing a claim to obtain a patent, the patentee surrenders all equivalents to the amended claim element. Petitioner asserts this holding departs from past precedent in two respects. First, it applies estoppel to every amendment made to satisfy the requirements of the Patent Act and not just to amendments made to avoid preemption by an earlier invention, *i.e.*, the prior art. Second, it holds that when estoppel arises, it bars suit against every equivalent to the amended claim element. The Court of Appeals acknowledged that this holding departed from its own cases, which applied a flexible bar when considering what claims of equivalence were estopped by the prosecution history. Petitioner argues that by replacing the flexible bar with a complete bar the Court of Appeals cast doubt on many existing patents that were amended during the application process when the law, as it then stood, did not apply so rigorous a standard.
>
> We granted certiorari to consider these questions.

*Festo*, 535 U.S. at 726–28, 122 S.Ct. 1831. Thus, it is clear that the Supreme Court's focus in *Festo* was on the nature of amendments to a patent application that will give rise to prosecution history estoppel when a patentholder asserts infringement under the doctrine of equivalents.

More specifically, the Court explained that the role of prosecution history estoppel is to prevent an inventor from using the doctrine of equivalents to "recapture in an infringement action the very subject matter surrendered as a condition of receiving a patent." *Id.* at 734, 122 S.Ct. 1831.[2] With that role in mind, the Court

---

**2.** In *Festo*, the Court provided the following more detailed, but nevertheless succinct primer on prosecution history estoppel and its effect on the doctrine of equivalents:

> Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process. Estoppel is a "rule of patent construction" that ensures that claims are interpreted by reference to those "that have been cancelled or rejected." *Schriber–Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220–221, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132 (1940). The doctrine of equivalents allows the patentee to claim those insubstantial alterations that

were not captured in drafting the original patent claim but which could be created through trivial changes. When, however, the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent. On the contrary, "[b]y the amendment [the patentee] recognized and emphasized the difference between the two phrases[,] ... and [t]he difference which [the patentee] thus disclaimed must be regarded as material." *Exhibit Supply Co. v. Ace Patents Corp.*, 315

turned to consideration of the question of what kinds of amendments may give rise to estoppel. The Court rejected the petitioner's argument "that estoppel should arise when amendments are intended to narrow the subject matter of the patented invention, for instance, amendments to avoid prior art, but not when the amendments are made to comply with requirements concerning the form of the patent application." *Id.* at 735, 122 S.Ct. 1831. Although the Court acknowledged that "[o]ur 'prior cases have consistently applied prosecution history estoppel only where claims have been amended for a limited set of reasons,' such as 'to avoid the prior art, or otherwise to address a specific concern—such as obviousness—that arguably would have rendered the claimed subject matter unpatentable,' " the Court had "not purport[ed] to define that term or to catalog every reason that might raise an estoppel." *Id.* (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30–32, 117 S.Ct. 1040, 137

L.Ed.2d 146 (1997)). "Indeed," the Court explained, "we stated that even if the amendment's purpose were unrelated to patentability, the court might consider whether it was the kind of reason that nonetheless might require resort to the estoppel doctrine." *Id.* (again citing *Warner-Jenkinson*, 520 U.S. at 40–41, 117 S.Ct. 1040). Therefore, the Court "agree[d] with the Court of Appeals that *a narrowing amendment* made to satisfy *any* requirement of the Patent Act may give rise to an estoppel," including, by way of express example, any requirement of 35 U.S.C. § 112. *Id.* at 736 (emphasis added). As to § 112 requirements, the Court distinguished between "truly cosmetic" amendments under that provision, which did not narrow the scope of the patent or raise an estoppel, and "a § 112 amendment [that] is necessary and narrows the patent's scope—even if only for the purpose of better description," to which estoppel "may apply." *Id.* 736–37, 122 S.Ct. 1831.[3]

U.S. 126, 136–137, 62 S.Ct. 513, 86 L.Ed. 736 (1942).

A rejection indicates that the patent examiner does not believe the original claim could be patented. While the patentee has the right to appeal, his decision to forgo an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim. *See Goodyear Dental Vulcanite Co. v. Davis*, 102 U.S. 222, 228, 12 Otto 222, 26 L.Ed. 149 (1880) ("In view of [the amendment] there can be no doubt of what [the patentee] understood he had patented, and that both he and the commissioner regarded the patent to be for a manufacture made exclusively of vulcanites by the detailed process"); *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1577–1578 (C.A.Fed.1997) ("Prosecution history estoppel ... preclud[es] a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent"). Were it otherwise, the inventor might avoid the PTO's gatekeeping role and seek to recapture in an

infringement action the very subject matter surrendered as a condition of receiving the patent.

Prosecution history estoppel ensures that the doctrine of equivalents remains tied to its underlying purpose. Where the original application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee cannot assert that he lacked the words to describe the subject matter in question. The doctrine of equivalents is premised on language's inability to capture the essence of innovation, but a prior application describing the precise element at issue undercuts that premise. In that instance the prosecution history has established that the inventor turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, and affirmatively chose the latter.

*Festo*, 535 U.S. at 733–35.

3. The second question at issue in *Festo* was, "Does the estoppel bar the inventor from as-

What becomes apparent from this discussion is that the Court expressly addressed *only* prosecution history estoppel and its impact on alleged infringement under the doctrine of equivalents; the Court did not expressly address the "recapture rule," as applied to reissue patents, nor did it suggest that its discussion of the scope of prosecution history estoppel would *also* be applicable to the scope of the "recapture rule." Indeed, the Supreme Court did not even mention the "recapture rule" or the reissue process. Rather, the Court mentioned "recapture" of subject matter only in the context of a patentholder attempting to use the doctrine of equivalents to "recapture in an infringement action the very subject matter surrendered as a condition of receiving a patent." *Id.* at 734, 122 S.Ct. 1831.

Although this court concedes that a precise analogy between the scope of prosecution history estoppel and the scope of the "recapture rule" would make a tidy package, the Supreme Court has not wrapped the two doctrines together in that way. Thus, even supposing that *Festo* states a "new rule," it does not expressly state a "new rule" concerning application of the "recapture rule," which is the only "new rule" that would be pertinent here. Therefore, *Festo* does not appear to provide an exception to the "law of the case" doctrine or "mandate rule" permitting or requiring reconsideration of this court's rejection of the applicability of the "recapture rule" in this case. *See Intergraph Corp.*, 253 F.3d at 698 (one of the exceptions to application of the "law of the case" is "an intervening change of controlling legal authority"); *Gould, Inc.*, 67 F.3d at 930 (identifying one of three applicable exceptions to the "law of the case" doctrine

as "controlling authority has since made a contrary decision of the law applicable to the issue").

## 2. "Application" of Festo in Eggert

Automatic nevertheless contends that the Board of Patent Appeals of the Patent and Trademark Office has since recognized that the Supreme Court's decision in *Festo* is also relevant to the analysis of whether reissue claims are barred by the "recapture rule," citing *EX PARTE EGGERT*, 67 U.S.P.Q.2d 1716, 1722 (Bd.Pat.App. & Interf.2003) (*per curiam*). This court finds that Automatic reads *EGGERT* much too broadly.

First, the references to the Supreme Court's decision in *Festo* in the Board's decision in *EGGERT* generally do *not* relate to the formulation of the scope of prosecution history estoppel in *Festo. See EGGERT*, 67 U.S.P.Q.2d at 1722, 2003 WL 21542454 (citing *Festo* for the proposition that "[t]he scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described," citing *Festo*, 535 U.S. 722, 122 S.Ct. at 1837, 152 L.Ed.2d 944, and as "acknowledg[ing] that patent applicants should not be presumed to have had more foresight in making such amendments than an applicant whose application was granted without amendments have been submitted," citing *Id.* at 1841); *id.* at 1732 (citing *Festo* for the principle that a patentee's decision to forego an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim, citing *Festo*, 122 S.Ct. at 1838; for the principle that "claim drafting is an imperfect art," citing *id.* at 1840–41;

serting infringement against any equivalent to the narrowed element or might some equivalents infringe?" *Festo*, 535 U.S. at 737, 122 S.Ct. 1831. That question does not appear to

be pertinent to the present ruling, where the only issue is validity of the Re482 patent, not infringement of the Re482 patent, either literally or under the doctrine of equivalents.

and for the principle that "[w]hile a narrowing amendment may demonstrate what the claim is not, it may still fail to capture precisely what the claim is," citing *id.* at 1841).

Moreover, the holding in *EGGERT* concerning the applicability of the "recapture rule" is precisely in accord with this court's interpretation of that rule, in that it focuses on whether an amendment was made *to avoid the prior art:*

> As reissue claims 15 and 22 are both narrower than the surrendered subject matter *in an aspect germane to the prior art rejection* (i.e., the shape of the retaining member) and broader only in aspects unrelated to the rejection, we reach the same conclusion as set forth on pages 25–26 of the earlier decision of the Board (Paper No. 17) that reissue claims 15 and 22, and hence claims 16–21 which depend from reissue claim 15, are narrower than the surrendered subject matter *in an aspect germane to the prior art rejection and broader only in aspects unrelated to the rejection.* The facts before us therefore fall into category (3)(b) as described by *Clement,* 131 F.3d at 1470, 45 U.S.P.Q.2d at 1165:
>
> > In both *Mentor* and *Ball, the relevance of the prior art rejection to the aspects narrowed in the reissue claim was an important factor in our analysis.* From the results and reasoning of those cases, the following principles flow: (1) if the reissue claim is as broad as or broader than the canceled or amended claim [the surrendered subject matter] in all aspects, the recapture rule bars the claim; (2) if it is narrower [than the surrendered subject matter] in all aspects, the recapture rule does not apply, but other rejections are possible; (3) if the reissue claim is broader [than the surrendered subject matter] in some aspects,

but narrower [than the surrendered subject matter] in others, then: (a) if the reissue claim is as broad as or broader *in an aspect germane to a prior art rejection,* but narrower in another aspect completely unrelated to the rejection, the recapture rule bars the claim; (b) if the reissue claim is narrower *in an aspect germane to [a] prior art rejection,* and broader in an aspect unrelated to the rejection, the recapture rule does not bar the claim, but other rejections are possible.

Thus, in accordance with the principles set forth in *Clement,* the recapture rule does not bar the reissue claims in this case.

*EGGERT,* 67 U.S.P.Q.2d at 1731–32 (footnote omitted; emphasis added). In short, the applicability of the "recapture rule" in *EGGERT* still related to whether the amendment in the original patent was *to overcome a prior art rejection.*

Finally, and perhaps most importantly, in *EGGERT,* the majority *rejected* application of *Festo*'s formulation of the scope of prosecution history estoppel to determine the scope of the "recapture rule":

> While, as pointed out by the dissent, "[a] patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim" (*Festo,* 535 U.S. 722, 122 S.Ct. at 1842, 152 L.Ed.2d 944, 62 U.S.P.Q.2d at 1713) in the context of prosecution history estoppel when applying the doctrine of equivalents in an infringement action, *we are aware of no case, and the dissent has not pointed to any case, which so defined "surrendered subject matter" in the context of the reissue recapture rule.* Indeed, as discussed above, the precedent in the area of the reissue recapture rule repeatedly

establishes that the narrowing of a claim by amendment constitutes surrender of the amended claim, that is, the claim prior to the amendment. Moreover, in light of the fact that the fourth paragraph of 35 U.S.C. § 251 permits enlargement of the scope of patent claims in reissue within two years of the issue date of the patent, *it is quite apparent that the theory of disclaimer through narrowing amendments expressed in Festo cannot be applied to correction of patents through reissue consistent with 35 U.S.C. § 251.*

*EGGERT,* 67 U.S.P.Q.2d at 1734 n. 21, 2003 WL 21542454 (emphasis added). If anything, then, *EGGERT* stands for the proposition that the Supreme Court's decision in *Festo* is *not* applicable to the scope of the "recapture rule" for reissue patents. Thus, Automatic has failed to demonstrate that any court, let alone any court stating controlling precedent, has applied the "*Festo* rule" regarding the scope of prosecution history estoppel, for purposes of a claim of infringement under the doctrine of equivalents, to the scope of the "recapture rule," for purposes of determining the validity of a reissue patent.

### 3. Is the Supreme Court's rule "new"?

This court also agrees with Dethmers that, contrary to Automatic's contentions, the Supreme Court's "rule" regarding the scope of prosecution history estoppel in *Festo* is not "new." As the Supreme Court itself explained in *Festo,* in stating the rule upon which Automatic relies, the Court "*agree[d] with the Court of Appeals* that a narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel." *Festo,* 535 U.S. at 736, 122 S.Ct. 1831 (emphasis added). Thus, the Federal Circuit Court of Appeals had *already* stated the rule affirmed by the Supreme Court in *Festo.*

More specifically, in the appellate court's *en banc* decision in *Festo,* which the Supreme Court affirmed in pertinent part, the Federal Circuit Court of Appeals addressed the following question:

1. For the purposes of determining whether an amendment to a claim creates prosecution history estoppel, is "a substantial reason related to patentability," *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 33, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), limited to those amendments made to overcome prior art under § 102 and § 103, or does "patentability" mean any reason affecting the issuance of a patent?

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki,* 234 F.3d 558, 563 (Fed.Cir. 2000) (*Festo App. En Banc*). The *en banc* court answered that question as follows:

For purposes of determining whether an amendment gives rise to prosecution history estoppel, a "substantial reason related to patentability" is not limited to overcoming or avoiding prior art, but instead includes *any* reason which relates to the statutory requirements of a patent. Therefore, a narrowing amendment made for any reason related to the statutory requirements for a patent will give rise to prosecution history estoppel with respect to the amended claim element.

*Festo App. En Banc,* 234 F.3d at 566. Thus, the Federal Circuit Court of Appeals plainly stated the rule *for the scope of prosecution history estoppel* later affirmed by the Supreme Court.

■ The Federal Circuit Court of Appeals has exclusive jurisdiction over appeals in patent decisions, and thus states "controlling authority" for patent law issues, at least in the absence of intervention by the Supreme Court. *See* 28 U.S.C. § 1295; *Apotex, Inc. v. Thompson,* 347

F.3d 1335, 1342 ("Under 28 U.S.C. § 1295(a)(1), this court has exclusive jurisdiction over an appeal from a final decision of a district court 'if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title.' Section 1338 grants district courts original jurisdiction over any civil action 'arising under any Act of Congress relating to patents.' 28 U.S.C. § 1338(a)."). Automatic has not identified any internal split within the Federal Circuit, which might require mending by the Supreme Court, on the circumstances in which prosecution history estoppel bars a claim of infringement under the doctrine of equivalents. However, even had there been such an intracircuit split, that split was mended when the *en banc* court stated the rule in *Festo App. En Banc*. Therefore, it follows that the rule in the *en banc* decision in *Festo* was "controlling law" at least from the time that the *en banc* court handed down its decision.

 The date of the *en banc* court's decision is important here. That decision was handed down on November 29, 2000. Although this date is *after* this court's decision in *Dethmers I*, it is *prior to* the date of the appellate court's decision in *Dethmers App. I*, which was December 5, 2001. *See Dethmers App. I*, 272 F.3d at 1365. Consequently, there was no change in the "controlling authority" on the rule regarding what amendments give rise to prosecution history estoppel between the appellate court's decision in this case in *Dethmers App. I* and the Supreme Court's decision in *Festo*. Thus, no "change in controlling authority" warrants reconsideration in this case, because Automatic has failed to demonstrate that the rule regarding the scope of prosecution history estoppel changed after the controlling decision in this case, *see Intergraph Corp.*, 253 F.3d at 698 (one of the exceptions to application of the "law of the case" is "an intervening

change of controlling legal authority"); *Gould, Inc.*, 67 F.3d at 930 (identifying one of three applicable exceptions to the "law of the case" doctrine as "controlling authority has since made a contrary decision of the law applicable to the issue"), just as Automatic has failed to demonstrate that the *"Festo* rule" regarding the scope of prosecution history estoppel, for purposes of a claim of infringement under the doctrine of equivalents, has ever been applied to determine the scope of the "recapture rule," for purposes of determining the validity of a reissue patent.

### 4. Application of the "Festo rule" by the appellate court in this case

The final detail bedeviling Automatic's argument for reconsideration is that, as Dethmers contends, the Federal Circuit Court of Appeals acknowledged and applied *in this case* the *"Festo* rule," as stated by the *en banc* court, to an issue of the scope of prosecution history estoppel, but *did not* apply that rule to the scope of the "recapture rule." Automatic cross-appealed this court's decision that prosecution history estoppel barred application of the doctrine of equivalents to the '166 patent, a matter which the appellate court reviewed *de novo*. *See Dethmers App. I*, 272 F.3d at 1377. The appellate court rejected Automatic's cross-appeal.

Interestingly, although the claim limitations that Automatic asserted are infringed by equivalents had been amended during prosecution in a manner that narrowed the scope of the claims, Automatic argued before the appellate court "that the amendments do not give rise to prosecution history estoppel because they were not made *to avoid the prior art* and because they were made voluntarily." *Id.* (emphasis added). In other words, Automatic argued on appeal in this case that prosecution history estoppel should only arise from amendments to avoid prior art, which is the

requirement that this court had found determined the scope of the "recapture rule." The appellate court cited the *en banc* decision in *Festo* for the following statement of the *"Festo* rule" regarding the scope of prosecution history estoppel: "When a claim is narrowed for any reason related to the statutory requirements for a patent, prosecution history estoppel will arise with respect to the amended claim limitation and will bar an application of the doctrine of equivalents with respect to that claim limitation." *Id.* (citing *Festo App. En Banc,* 234 F.3d at 563–64). Applying this rule, the appellate court rejected Automatic's cross-appeal, as follows:

> *Festo* makes clear ... that amendments made for reasons other than to avoid prior art and voluntary amendments can give rise to prosecution history estoppel. [*Festo App. En Banc,* 234 F.3d at 563–64.] Because Automatic has not established that the amendments were made for a purpose unrelated to patentability, we affirm the district court's determination that prosecution history estoppel bars the application of the doctrine of equivalents to the amended claim limitations, *see id.* at 586, 234 F.3d 558, 56 U.S.P.Q.2d at 1886, and its grant of Dethmers' motion for summary judgment of non-infringement.

*Dethmers App. I,* 272 F.3d at 1377. Thus, *in this case,* the appellate court both stated and applied the *"Festo* rule" to issues of prosecution history estoppel, for purposes of a claim of infringement under the doctrine of equivalents, *after* affirming application of a much narrower rule—requiring an amendment to avoid prior art—for the scope of the "recapture rule," for purposes of a claim of invalidity of a reissue patent. *See id.* at 1376.

Under circumstances in which the appellate court has shown itself to be aware of—and indeed, has applied—the rule upon which Automatic relies *in another context,* but has rejected application of that rule to issues regarding the scope of the "recapture rule," which are now contested on a motion to "reconsider," there is simply no reason to believe that the appellate court intended for the rule in both contexts to be analogous. Therefore, the "law of the case," as articulated by the Federal Circuit Court of Appeals *in this case,* is that the scope of the "recapture rule" is different from the scope of prosecution history estoppel, and this court correctly applied both the "recapture rule" as to the Re482 patent and prosecution history estoppel as to the '166 patent.[4]

### III. CONCLUSION

The "devil" is again in the "details" in this case, this time in the "detail" that there is no basis to reconsider a prior dispositive motion, where there has been no "change in controlling authority." The court finds that there is no ground to "reconsider" its prior ruling regarding application of the "recapture rule," because there has been no "change in controlling authority" regarding the scope of the "recapture rule" since the appellate court's decision in this case. Consequently, Automatic's October 31, 2003, Motion For Reconsideration Of Motion For Summary Judgment Of Invalidity Of RE. 35,482 (docket no. 314) is **denied** in its entirety.

**IT IS SO ORDERED.**

---

4. Having concluded that there is no "change in controlling authority" with regard to the scope of the "recapture rule," the court finds it unnecessary to address the parties' arguments about whether or not a reformulated "recapture rule"—as Automatic states it—would be applicable in this case, or would lead to a different result.